**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2005-KA-02136-SCT**

*CHRISTINE WILSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/05/2005 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JULIE ANN EPPS |
| | CYNTHIA HEWES SPEETJENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | DAVID BYRD CLARK |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/25/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     In the Madison County Circuit Court, Christine Wilson was indicted, tried, convicted

and sentenced to the custody of the Mississippi Department of Corrections for the crime of

felony shoplifting.  Aggrieved by the trial court's entry of the final judgment of conviction

and sentence, Wilson appeals to us.  Finding no reversible error, we affirm.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2.     Christine Wilson was indicted by a Madison County grand jury for the crime of felony

shoplifting at Dillard's in the Northpark Mall in Ridgeland. We reveal here the relevant facts

through the testimony of the various witnesses called during Wilson's subsequent jury trial in the Circuit Court of Madison County, Judge Samac S. Richardson, presiding.

¶3.     On November 4, 2002, Ridgeland police officer Steve Wilson[1] was working at his part-time job as a loss prevention officer for Dillard's. As a loss prevention officer, Officer Wilson's primary duty was to look for shoplifters. Dillard's loss prevention officers served as either camera operators or floor operators. On this day, Officer Wilson was serving as a floor operator when he noticed three females and a male gathering merchandise and then carrying the merchandise to one location in the store, which was a typical *modus operandi* for shoplifters. As Officer Wilson stated, "I'm not talking about a couple of items; I'm talking about quite a few items," which consisted mostly of leather coats and sweat suits. With Officer Wilson's attention understandably being focused on these four individuals, he began to approach them while they were all together. As Officer Wilson approached them, they began lifting their bags of merchandise in an apparent effort to leave the store. Once these four individuals noticed Officer Wilson approaching, "they split up" with two of the females heading toward the parking lot door of Dillard's (and dropping the merchandise bag), and the other female and male heading toward the mall area. Officer Wilson made a

_____

[1]There is no indication from the record that Christine Wilson and Officer Steve Wilson are related. To avoid confusion in discussing the evidence, the loss prevention officer will be referred to as "Officer Wilson," and the defendant will be referred to as "Wilson."

2

courtroom identification of Wilson as the woman who was with the male. Officer Wilson noted that by then, Wilson was not carrying a merchandise bag, but the male was.

¶4.     Officer Wilson used his cell phone to call the Ridgeland Police Department for backup and then apprehended Wilson and the male in the mall area, also recovering the bag, which contained leather coats and sweat suits. The total value of the recovered merchandise in the two bags was $1,100.50. On redirect examination, Officer Wilson testified as follows:

> Q. Let's concentrate on this defendant. What specifically did you see this defendant do during this episode?
>
> A. Hold the bag open so the merchandise could be taken and put in the bag.
>
> Q. Now, when merchandise - - a customer pays for merchandise, does the cash register attendant do anything with the sale tags?
>
> A. Oh, yeah. There's - - well, we have a system. It's a pop-label system. But in essence, what it amounts to is they have to scan the tag that's on the merchandise. They also have to apply a tag. So it's a two-tag system. None of the merchandise had pop-labels on the tags and none of the merchandise had that second, added label that the yellow label goes on there. Without that, it can't be rung up.
>
> Q. And when this defendant was apprehended by you and the officers, together, did she produce a sales ticket or a receipt where she had paid for anything?
>
> A. She didn't produce a receipt for the merchandise that we recovered. Now I don't know if she had purchased anything else or not.
>
> Q. Were there any receipts found in either of the two bags - -
>
> A. No, sir.

Q. - - for the fifteen garments?

A. No, sir.

¶5.     Timothy Harris, the male suspect, pleaded guilty to felony shoplifting and testified for the State. By the time of Wilson's trial, Harris was incarcerated based on his conviction. Harris testified that he did not know Wilson on the day of the incident and did not know her name on the day of the trial; however, he testified that he shoplifted regularly with the other two females. Harris further testified that Wilson knew the other two females and that she "knew what we was doing [sic]" because "she went in the store with us." Harris testified that the plan was to take the clothes, not pay for them, and sell them.

¶6.     According to Harris, the plan was that he would remain outside the store waiting to be called back into the store to assist with carrying the bags of merchandise out of the store.[2] Once the women "called me back in there to tote them out," Harris went into the store and "toted" one of the bags out of the store, at which time he was stopped by security. Harris further testified that he did not hold the bag while the other three women were stuffing it. Harris stated that he did not see what was happening inside the store because he was outside

_____

[2]We deem it imperative here to note that, while never specifically stated in the record, a review of the record, when considered in its totality, reveals that a jury could easily come to the conclusion that, although Harris was "outside" Dillard's while the women were inside shoplifting the merchandise, Harris was "outside" the store in the mall area, waiting to be summoned by the women for assistance in carrying the bags of merchandise out of the store. In other words, a reasonable juror could fairly infer that Harris was not outside the store in the parking lot, totally oblivious to what was occurring inside the store. This will be discussed in more detail, *infra*.

the store, waiting to be called into the store to pick up the bags.  After Harris was cross-examined by defense counsel concerning, *inter alia*, Harris's inability to see what the women were doing inside the store since he was outside the store, Harris was questioned further by the prosecutor during the State's redirect examination:

Q.  Mr. Harris, as you say, you were to wait outside until they told you to come get the bags.

A.  Right.

Q.  Who's [sic] plan was this?

A.  Sir?

Q.  Who made that plan?

A.  It was all our plan.

MR. CONNER: Your Honor, we object.  The question calls for hearsay.

THE COURT:        Overruled.

Q.  Who's [sic] plan was that?

A.  We all went to steal.

Q.  And everybody in that car - - who got in that vehicle knew you were about to go steal some clothes?

A.  Yes, sir, they did.

MR. CONNER: Object to speculation as to what anyone else knew.

Q.  How is it everybody else knew?

THE COURT:        Overruled.

5

A. Sir?

Q. How is it everybody knew?

    MR. CONNER: Object to a fact not in evidence.

    MR. ROGILLIO: He's trying to get the fact into evidence.

    MR. CONNER: The form of the question is improper.

    THE COURT: Overruled.

Q. How was it that everybody knew?

A. Sir?

Q. How was it that everybody knew?

A. Because every - - everybody know [sic] that we work together like that, you know. They know - - they know exactly what we were going to the store to do. We wasn't [sic] going to watch no movie. We wasn't [sic] going to buy nothing [sic].

¶7. Ridgeland police officer Kevin Mathis[3] arrested Wilson. Officer Mathis testified that the clothing in the suspects' bags still contained tags and that Wilson produced no receipt showing that she had paid for the clothing.

¶8. Christine Wilson took the stand in the defendant's case-in-chief, and she identified one of the two unknown females as her friend, Shameka Davis. Wilson also testified that she did not know the name of the other female. Wilson further testified:

---

[3]By the time of the trial, Mathis was employed by the Federal Bureau of Prisons.

6

A. Yes, sir. [Davis and I] were going to the mall - - or we were about to go to the mall. And she told me that she was going to pick up two of her friends that wanted to go to the mall with us. So she went and picked up Mr. Harris and the other lady. And when she picked them up, we went to the mall. We all went into Dillard's. They went their way; I went my separate way. When I came back, I told - - I was talking to my friend. I told her that I was about to checkout, and she told me that - - she told me what was going to go on. So I walked - - I put my merchandise on the rack. I walked out of the store. I was sitting outside on a bench. I was waiting on her to come out of the store.

By that time, must be about twenty minutes later, Mr. Wilson, the officer, he had on regular clothes, he arrested me, told me that - - he read me my rights. He arrested me and told me that he had me for shoplifting. And when he arrested me, I didn't have any merchandise. I didn't have nothing on me. All I had was my purse. And he checked - - he searched my purse. He got - - he took the money out or whatever; he put everything back in after he took it out. And he just - -he arrested me, and he took me to the police station and booked me; and, that was about it.

Wilson further emphasized in her testimony that she only found out about the plan to shoplift from Davis once inside the store, and that she took no part in the shoplifting. Additionally, she stated that she did not see anyone else shoplifting.

¶9. After the defendant rested her case-in-chief, Officer Wilson testified briefly in the State's rebuttal. At the conclusion of the presentation of the evidence, the trial judge's reading of the jury instructions to the jury, and closing arguments of counsel, the jury deliberated and returned a unanimous verdict finding Wilson guilty of felony shoplifting. The trial judge promptly sentenced Wilson to five years in the custody of the Mississippi Department of Corrections, with the last year suspended, and five years supervised probation.

7

Wilson also was ordered to pay court costs in the amount of $304.50 and a $1,000 fine. A judgment of conviction and sentence was likewise entered by the trial judge, and the trial judge denied Wilson's subsequently-filed motion for a new trial. Wilson timely appealed the trial court's final judgment and order denying post-trial motions.[4]

¶10.   Wilson presents three issues for this Court to decide: (1) whether the trial court erred in granting the State's jury instruction on aiding and abetting; (2) whether the trial court erred in imposing a felony sentence upon Wilson; and (3) whether the trial court erred in admitting a co-conspirator's testimony. We will restate the issues for the sake of clarity in discussion.

**I.     WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S JURY INSTRUCTION ON AIDING AND ABETTING.**

¶11.   We recently addressed this Court's familiar standard of review when considering challenges to jury instructions. "The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole." *Spicer v. State*, 921 So. 2d 292, 313 (Miss. 2006) (quoting *Parks v. State*, 884 So. 2d 738, 746 (Miss. 2004) (citations omitted)). Stated differently:

> "When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed." *Burton ex rel. Bradford v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993). Similarly, this Court has stated that

---

[4]Wilson was represented by the Madison County public defender at trial. The trial court held a hearing following the trial concerning a motion to dismiss the public defender as Wilson's counsel at Wilson's request. The trial court thereafter entered an order granting the motion, and attorneys Julie Ann Epps and Cynthia Speetjens have represented Wilson in her appeal to this Court.

"[i]n determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997) (quoting *Collins v. State*, 691 So. 2d 918 (Miss. 1997)). In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.

*Milano v. State*, 790 So. 2d 179, 184 (Miss. 2001).

¶12.   Wilson argues that an improper jury instruction was granted.  The objectionable jury instruction was tendered to the Court as the State's instruction number S-4, and once given by the trial judge, the instruction was designated for the record by the trial judge as Jury Instruction No. 5.  This instruction stated:

> The Court instructs the jury that if you find from the evidence that the crime of shoplifting was committed in this case; each person who was **present, consenting** to the commission of the crime and **doing any act which aided, assisted or encouraged** the crime, is guilty to the same extent as if he committed the whole crime.

(Emphasis added).  Wilson argues in her brief to this Court:

> The obvious flaw in the instruction is that it does not require that Christine **knowingly, intentionally or willfully** do an act to aid, assist or encourage the crime.  Rather, it allows the jury to convict her if the others committed the crime, she knew of it but was merely present and did an act which incidentally assisted or encouraged the crime even though she may have had not [sic] intent to further the crime.

(Emphasis in original).  We fail to see the distinction between the language "knowingly, intentionally or willfully do an act to aid, assist or encourage the crime," and "present,

consenting[5] to the commission of the crime and doing any act which aided, assisted or encouraged the crime." In order for Wilson, as a co-conspirator, to be present and consenting to the commission of the crime of shoplifting, she must have known of the crime to be perpetrated and intentionally and willfully participated in some element of the completed crime. We upheld similar language in a jury instruction in *Kelly v. State*, 493 So. 2d 356, 359 (Miss. 1986):

> The court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an *ingredient* to the crime, or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence, beyond a reasonable doubt, that the Defendant, Ike Lee Kelly, did wilfully, knowingly, unlawfully and feloniously do any act which is an ingredient of the crime of armed robbery or immediately connected with it, or leading to its commission, then and in that event, you should find the Defendant guilty as charged.

*Id.* (Emphasis in original).

¶13. Obviously, in *Kelly*, we approved of the word "consenting," and the language of the jury instruction in the case *sub judice*, notwithstanding the omission of the phrase "knowingly, intentionally or willfully," meets our requirement that a jury instruction not simply state that a defendant merely approved of the crime. Keeping in mind the admonition that we must read and consider the jury instructions as a whole to determine if the jury was properly instructed on the applicable law, in addition to Jury Instruction No. 5 given in

---

[5]To consent to an act means "to agree (to do something) . . . . to give permission, approval, or assent." Webster's New World Dictionary 296 (3d college ed.1988).

today's case, the jury also received from the trial court Jury Instruction No. 2, which stated in pertinent part that the defendant was presumed innocent and before the jury could find the defendant guilty of the crime charged, the State had to prove each and every element of the crime beyond a reasonable doubt. Jury Instruction No. 3, the "elements" instruction, informed the jury that before the jury could find Wilson guilty of the crime of felony shoplifting, the jury had to find that Wilson "(1) did wilfully, unlawfully and feloniously take possession of merchandise held by and offered or displayed for sale by Dillard's Department Store, (2) having a total value over $250.00, (3) with the intention and purpose of converting such merchandise to her own use without paying the merchant's stated price," and that if the State "failed to prove any one or more of [these] elements beyond a reasonable doubt," the jury "shall find [Wilson] not guilty."

¶14.     With these various jury instructions before us in the case *sub judice*, we return to Jury Instruction No. 5. The first phrase of this instruction states: "The Court instructs the jury that if you find from the evidence that the crime of shoplifting was committed in this case"; thus, before the jury could consider the remainder of the instruction, it had to find from the evidence that the crime of shoplifting had been committed. In order to find that the crime of felony shoplifting had been committed, the jury had to find that the State had proven beyond a reasonable doubt each of the three elements of the crime of felony shoplifting as set out in Jury Instruction No. 3. In reading Jury Instruction No. 5 in conjunction with Jury Instruction No. 3 and the other jury instructions, if the jury found that the crime of shoplifting was committed in this case, then the jury was to consider the remainder of Jury Instruction

11

No. 5, which stated: "each person who was present, consenting to the commission of the crime and doing any act which aided, assisted or encouraged the crime, is guilty to the same extent as if he committed the whole crime."

¶15. Returning to the evidence, which we view in the light most favorable to the jury verdict, Officer Wilson observed suspicious activities at Dillard's involving four persons, one of whom was Christine Wilson. When he approached the location where the four suspects were standing along with the merchandise which they had "gathered," they scattered, with Wilson departing Dillard's into the mall area along with Harris, who had one of the bags of stolen merchandise. This bag of merchandise did not have the second tag or label which the cash register attendant applied to the merchandise upon it's being "rung up." Likewise, no one could produce a sales ticket or receipt for the merchandise found in the bag. Officer Wilson's version of the facts as to the contents and status of the merchandise found in the bags was verified by Ridgeland police officer Kevin Mathis. Certainly, from this evidence, the jury was justified in finding that the crime of felony shoplifting had been committed and that Wilson "was present, consenting to the commission of the crime and doing any act which aided, assisted or encouraged the crime." Even though she did not stuff every item of merchandise into the two bags, and personally carry the two bags of merchandise, worth more than $1,100, from Dillard's without paying for the merchandise, she clearly acted in concert with the other three shoplifters. Jury Instruction No. 5 in no way lessened the responsibility of the jury in returning a guilty verdict against Wilson only if each and every

12

element of the crime of felony shoplifting was proven beyond a reasonable doubt as to Wilson.

¶16.    With this being said, we acknowledge that our case law reveals that one of the main concerns raised by defendants to aiding and abetting instructions similar to today's Jury Instruction No. 5 is that, contrary to the general "elements of the crime" instruction in which the jury is always informed that the State must prove beyond a reasonable doubt each and every element of the crime charged, such an instruction as submitted and given in *Kelly* diminishes the responsibility of the jury in that the jury can find a defendant guilty of the charged offense even if the defendant is proven to be guilty of committing only one element of the offense.  We addressed these concerns in *Kelly*:

> The appellant contends that this instruction would allow conviction of someone who is merely present at the time of the crime but had no intent to commit the crime. It is a well-established rule that the jury instructions actually given must be read as a whole. *Norman v. State*, 385 So.2d 1298, 1303 (Miss. 1980). In the instant case, the court gave instruction S-1, which properly instructed the jury as to the elements of the crime, the burden of proof, and the requisite intent. Based upon the above, the jury could have properly found the appellant guilty of armed robbery from the instructions given. *See also White v. State*, 330 So.2d 877, 879 (Miss. 1976) (jury instruction substantially identical to S-2 was approved by this Court). It is suggested that the words "element of" be substituted hereafter for "ingredient to" in the instruction.

*Kelly*, 493 So. 2d at 359.

¶17.    Wilson also argues that because Jury Instruction No. 5 is incompatible with the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting which we prospectively adopted in *Milano v. State*, 790 So. 2d 179 (Miss. 2001), the giving of Jury Instruction No. 5 in today's case was plain error.  In *Milano*, this Court upheld Timothy John Milano's

13

conviction of capital murder and kidnapping. We thoroughly addressed aiding and abetting instructions, and although lengthy, we quote extensively from *Milano* since this language is instructive and critical to today's discussion on this issue:

> The first issue presented to this Court is whether jury instructions S-13 and S-14, read together with the other instructions, fairly announced the law. We find that they did.
>
> Over the objection of defense counsel, the trial court allowed instructions S-13 and S-14 on aiding and abetting. These instructions are identical, except that S-13 applies to capital murder and S-14 applies to kidnaping, the relevant text of which is set out below:
>
> > If you believe from the evidence beyond a reasonable doubt that the Defendant, Timothy John Milano, did willfully, unlawfully and feloniously **do any act which is an element** of (capital murder/kidnaping) with which he is charged, or, immediately connected with it, or, leading to its commission, then and in that event, you should find the Defendant guilty of (capital murder/kidnaping).
>
> (Emphasis added). The problem with these instructions is that they allow for a guilty verdict if the defendant did "any act which is an element" of the crime.
>
> Contrary to these instructions, there were three instructions preceding these two that specifically addressed the burden of the State. For example, S-4, S-6-A, and S-7 each provide that "if the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the Defendant not guilty of [the crime]." Each jury instruction that specifically addressed the crimes charged also specifically stated that the State must prove every element of the crime beyond a reasonable doubt or the defendant is to be found not guilty.
>
> In *Hornburger v. State*, 650 So. 2d 510, 515 (Miss. 1995), this Court held that the jury was improperly instructed by a similar aiding and abetting instruction. However, when the instruction was read together with other instructions presented to the jury, the instructions adequately informed the jury of the law which made the improper instruction harmless error. *Id. See also Gray v. State*, 487 So. 2d 1304, 1308 (Miss. 1986) (when instructions are read

14

together, no error can be predicated on failure of one instruction to set out properly a necessary element of the crime, where the element was included correctly in other instructions).

Milano argues that recently similar instructions have been found to be reversible error. In *Berry v. State*, 728 So. 2d 568, 571 (Miss. 1999), this Court examined a jury instruction regarding the crime of aiding and abetting the transfer of cocaine. The jury instructions in *Berry* contained language substantively identical to the above instructions, except that the named crime was transfer of cocaine. However, in *Berry*, this Court stated, "in this case, however, we find that reading the instructions as a whole did not cure the error resulting from the improper instruction." *Id.* at 570.

In *Lester v. State*, 744 So. 2d 757, 760 (Miss. 1999), this Court also reversed a case based on similar jury instructions. As in *Berry*, this Court found that, "there is nothing in the other instructions which cures this." *Id.* However, in this case, there were three preceding instructions that properly placed the burden on the State to prove every element of the crime. The jury was fully instructed that if all the elements were not proven beyond a reasonable doubt, Milano was to be found not guilty. Accordingly, the jury could not have been confused when all instructions were considered and read together. We thus find the error harmless.

The same problematic jury instruction used in *Hornburger*, *Berry*, and *Lester* is once again before this Court. To avoid any further confusion, today, we prospectively adopt the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting due to continuing litigation and confusion over this issue. The use of this instruction should cure future problems regarding this issue. The instruction is as follows:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with

15

the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

Fifth Cir. Pattern Jury Instructions (Criminal) 2.06 (Aiding and Abetting) (Agency) (1998).

For the above reasons, we find that jury instructions S-13 and S-14 were erroneous. However, read with the other instructions which properly stated the law and required the jury to find that all elements of the offense had been proven before Milano could be found guilty, this error was harmless.

*Milano*, 790 So. 2d at 184-185, ¶¶15-22 (Miss. 2001) (emphasis in original).

¶18. In sum, the jury instructions in today's case, when read as a whole, clearly required the jury to find Wilson guilty only if the State met its burden of proof on each element of the crime. Again, our longstanding rule is to read jury instructions as a whole to determine if the jury was erroneously instructed. *Savory*, 954 So. 2d at 932. Even though Jury Instruction No. 5 was not in the form which we prospectively adopted in *Milano*, from the record before

16

us, we find no error, much less reversible error, in the trial court's giving of Jury Instruction No. 5, when we read this instruction along with all the other jury instructions which were given. *See also Duncan v. State*, 939 So. 2d 772, 779-81 (Miss. 2006) (trial court held not in error for granting jury instruction virtually identical to one approved in *Milano*); *Brengettcy v. State*, 794 So. 2d 987, 997-98 (Miss. 2001) (post-*Milano* decision of this Court approving aiding and abetting instruction not in the form adopted in *Milano*, distinguishing *Berry v. State*, 728 So. 2d 568, 570-71 (Miss. 1999), and *Liggins v. State*, 726 So. 2d 180, 184-85 (Miss. 1998)).[6] As we stated in *Brengettcy*, "[t]he error which led to reversal in *Liggins* is simply not present here." *Brengettcy*, 794 So. 2d at 998.

¶19.    While we again remind the trial bench and bar of the aiding and abetting instruction which we adopted in *Milano* in order to cure future problems, we find, based on the reasons stated, that this issue is without merit.

## II.    WHETHER THE TRIAL COURT ERRED IN IMPOSING A FELONY SENTENCE UPON WILSON.

¶20.    "This issue presents a question of law, for which the standard of review is de novo." *DeLoach v. State*, 722 So. 2d 512, 518 (Miss. 1998) (citing *Rose v. State*, 586 So. 2d 746, 751 (Miss. 1991); *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990)).

---

[6]Contrary to today's case, the objectionable instructions in *Berry* and *Liggins* clearly allowed the jury to find the defendants guilty if only one element of the principal offense was proven.

¶21.    Wilson argues that the trial court erred in sentencing her, thus entitling her to a new sentencing hearing.  Wilson was indicted on May 23, 2003, for the November 4, 2002, crime of felony shoplifting pursuant to Mississippi Code Annotated section 97-23-93, which stated:

> A person convicted of shoplifting merchandise for which the merchant's stated price exceeds Two Hundred Fifty Dollars ($250.00) shall be guilty of a felony and, upon conviction, punished as provided in Section 97-17-41 for the offense of grand larceny.

Miss. Code Ann. § 97-23-93(7) (2002).  The statute subsequently was amended by the Legislature after Wilson was indicted but prior to her trial.  Miss. Code Ann. § 97-23-93, as amended, states:

> A person convicted of shoplifting merchandise for which the merchant's stated price exceeds Five Hundred Dollars ($500.00) shall be guilty of a felony and, upon conviction, punished as provided in Section 97-17-41 for the offense of grand larceny.

Miss. Code Ann. § 97-23-93 (7) (Rev. 2006).  This amendment effectively made the charge of shoplifting merchandise over $250 in value but not more than $500 in value to be a misdemeanor rather than a felony.  Wilson argues that, according to *Daniels v. State*, 742 So. 2d 1140 (Miss. 1999), she should be sentenced as a misdemeanant instead of a felon.  Wilson further argues that the jury made a finding only that she shoplifted merchandise with a value of more than $250 rather than the required $500 based upon Jury Instruction No. 3.

¶22.    Wilson's argument is misplaced.  In *Daniels*, the defendant committed the crime of capital rape, which at the time of the commission of the crime, carried a mandatory punishment of death or life imprisonment.  *Id.* at 1144.  The statute was amended effective from and after July 1, 1998, and the sentencing in *Daniels* occurred on August 24, 1998.

18

Based on prior decisions of this Court, the trial court was under the belief that it had to sentence the defendant under the statute in effect at the time of the commission of the crime. *Id.* at 1144-45. In applying Mississippi Code Annotated section 99-19-33, and in an effort to clarify our prior cases, we stated:

> [W]hen a statute is amended *to provide for a lesser penalty*, and the amendment takes effect before sentencing, the trial court must sentence according to the statute as amended. Any precedent holding otherwise is in error.

*Id.* at 1145 (emphasis added). However, section 99-19-33 and **Daniels** stand for the proposition that when the statutory penalty for a particular crime is legislatively reduced after the date of the commission of the crime but before the date of sentencing, the trial court must sentence the defendant under the amended statute. Such a proposition is a far cry from today's case where we are not dealing with an amended sentencing statute, but instead an amended statute as it relates to the elements of the criminal offense. One of the elements of the amended felony shoplifting statute now requires that the stolen merchandise have a stated price which exceeds $500 in value, as opposed to $250 in value. Thus section 99-19-33 and **Daniels** are totally irrelevant to today's discussion. In the case *sub judice*, only the elements of the crime of felony shoplifting changed and not the penalty, which has remained the same during this amendment process. Wilson was properly convicted based upon Mississippi Code Annotated section 97-23-93 as it existed on November 4, 2002, the date of the crime. This issue is without merit.

19

### III. WHETHER THE TRIAL COURT ERRED IN ADMITTING IMPERMISSIBLE HEARSAY.

¶23. "Relevancy and admissibility of evidence are largely within the discretion of the trial court, and reversal may be had only where that discretion has been abused." ***McIntosh v. State***, 917 So. 2d 78, 82 (Miss. 2005) (quoting ***Price v. State***, 898 So. 2d 641, 653 (Miss. 2005); ***White v. State***, 742 So. 2d 1126, 1134 (Miss. 1999)). "Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." ***Id.*** (quoting ***Price***, 898 So. 2d at 653; ***White***, 742 So. 2d at 1134). "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." ***Id.*** (quoting ***Price***, 898 So. 2d at 653; ***Walker v. State***, 878 So. 2d 913, 915 (Miss. 2004); ***Jefferson v. State***, 818 So. 2d 1099, 1104 (Miss. 2002)).

¶24. Wilson finds objectionable Harris's testimony concerning what the three women were doing inside the store while he was outside the store, as well as Wilson's knowledge of the overall plan to commit the crime of shoplifting. According to Wilson, this was improper testimony, to which Wilson's counsel objected. Wilson argues in her brief to this Court:

> [T]he prosecution introduced no evidence whatsoever to show how Harris came to his conclusion about [Wilson]'s knowledge. For example, there is no evidence that the four discussed the plan while en route to Dillard's. There is no evidence that Harris' [sic] conclusion is based on anything other than unsupported opinion or that it was not derived from what someone else, rather than [Wilson], told him.

20

Thus, Wilson argues that Harris's testimony was inadmissible hearsay and that no hearsay exception exists to allow this testimony to be heard by the jury. Wilson further argues that this inadmissible hearsay testimony was so prejudicial as to warrant a new trial because the testimony was the only direct evidence of Wilson's knowledge of and intent to shoplift.

¶25. We first note that while Wilson complains of Harris's inability to see what the three women were doing inside the store since Harris was "outside" the store, the fact is that Harris was in the mall area looking back into the store. Just because Harris was not physically inside the store, Harris was not prevented from observing activity inside the store. We note a portion of Harris's testimony, to which there was no objection:

> Q. Well, what did you observe [Wilson] doing?
> A. Pulling the clothes.
> Q. And, then, did what with the clothes?
> A. I don't know what she did with them. She was just with the other girls pulling the clothes.
> Q. Did you see who put the clothes in the bag?
> A. No, because I was outside.

From this testimony, the jury reasonably could have inferred from the evidence that Harris had at least some view of the activities occurring in the store. On the other hand, the record reveals that Harris testified on several occasions that he was not in the store, and thus he did not see the actions of any of the three females. However, the cold, hard facts are that when we consider Officer Wilson's eye-witness testimony as to what he observed the suspects doing, including Christine Wilson, Harris's testimony was cumulative, at best. The admissibility of evidence "is left to the sound discretion of the trial court within the boundaries of the Mississippi Rules of Evidence," and on appeal, the trial court's ruling on

21

the admissibility of evidence will not be deemed to be error unless the trial court has abused its discretion. ***Harris v. State***, 861 So. 2d 1003, 1018 (Miss. 2003) Additionally, "[s]uch error will warrant reversal only when the abuse of discretion has resulted in prejudice to the accused." ***Id.*** (citing ***Parker v. State***, 606 So. 2d 1132, 1137-38 (Miss. 1992)).

¶26.     Concerning the plan to shoplift, Harris testified, *inter alia*, over objection, that "[i]t was all our plan" to steal, that "[w]e all went to steal," and that everybody in the car (including Wilson) knew about the plan "[b]ecause every - - everybody know [sic] that we work together like that, you know.  They know - - they know [sic] exactly what we were going to the store to do.  We wasn't [sic] going to watch no movie." We wasn't [sic] going to buy nothing."

¶27.     In ***Williamson v. State***, 512 So. 2d 868, 878-79 (Miss. 1987), we stated:

> In ***Peoples v. State***, 501 So. 2d 424 (Miss. 1987), we again recognized that among co-conspirators there must be a recognition that they are entering into a common plan knowingly intending to further its common purpose. There need not be a formal or express agreement and the existence of any such agreement necessarily may be inferred from the circumstances, particularly the declarations, acts, and conduct of the alleged conspirator. Mere association with a conspirator is not enough -- "there must exist some evidence that the defendant has associated himself with the venture in some fashion, participated in it as something that he wished to bring about, or sought by his actions to make it succeed." ***Peoples***, 501 So. 2d at 428. One conspirator need not be aware of all the details of the conspiracy in order to be found to have agreed to participate in the conspiracy. ***U.S. v. Riccobene***, 709 F.2d 214, *cert. denied*, 464 U.S. 849, 104 S. Ct. 157, 78 L. Ed. 2d 514 (3rd Cir. 1983); ***U.S. v. Jannotti***, 729 F.2d 213 (5th Cir. 1984). Once a conspiracy is established co-conspirators [sic] statements made in the course of and in furtherance of the conspiracy are admissible against each conspirator, notwithstanding the confrontation clause or hearsay rule. ***Mitchell v. State***, 495 So. 2d 5, 11 (Miss. 1986); *see also*, Miss. R. Evi[d]. 801(d)(2) (E).

22

*Id.* at 878-79. With this in mind, there was sufficient evidence in the record that a conspiracy to shoplift existed among Harris, Wilson and the other two females. From the evidence and the reasonable inferences which may be drawn from the evidence, all viewed in the light most favorable to the State of Mississippi, the jury was informed that: (1) Wilson knew one of the other two females as Shameka; (2) on the day in question, Wilson was at Shameka's house when they decided to go to the mall; (3) when they left in Shameka's car headed to the mall, Shameka mentioned there were two friends (Harris and the other woman) who wanted to go to the mall with them; (4) Harris, Shameka, Wilson and the unknown female all went into Dillard's; (5) according to Officer Wilson, all three females were gathering merchandise and carrying the merchandise to a common location in the store, and when Officer Wilson approached the four individuals, "they split up" with two of the females heading toward one door to the parking lot, and the male (Harris) and the other female (Wilson) heading out into the mall area; and (6) the bag carried out by Harris when he and Wilson exited the store contained stolen merchandise.

¶28.    All testimony offered by Harris as to who knew what regarding the plan to shoplift, related to acts and conduct which occurred "during the course and in furtherance of the conspiracy" at a time when Wilson, from the evidence and reasonable inferences drawn from the evidence, could be deemed to be a co-conspirator. ***Williamson***, 512 So. 2d at 878. *See also **Bush v. State***, 895 So. 2d 836, 845-47 (Miss. 2005).

¶29.    With this having been said, we disagree with the State's assertion that Harris's "we-all-went-to-steal" testimony was admissible under Mississippi Rules of Evidence

23

801(d)(2)(E), concerning statements by a co-conspirator during the course and in furtherance of the conspiracy. We emphasize here that Wilson offered a hearsay objection to Harris's testimony that: "[i]t was all our plan" to steal, that "[w]e all went to steal," and that everybody in the car knew about the plan "[b]ecause every - - everybody know [sic] that we work together like that, you know. They know - - they know [sic] exactly what we were going to the store to do. We wasn't [sic] going to watch no movie." We wasn't [sic] going to buy nothing." Simply stated, this testimony is not hearsay under Mississippi Rules of Evidence. 801(a)(1) or (2). Further, the evidence was both relevant and admissible under Mississippi Rules of Evidence 401, 402 and 403, so that the jury could consider this evidence along with the other evidence, including Officer Wilson's eye-witness testimony as to what he personally observed the three women doing inside Dillard's.

¶30. Based on these reasons, the trial court did not abuse its discretion in allowing Harris's testimony as to the "plan to steal." We thus find this issue to be without merit.

## CONCLUSION

¶31. For the reasons stated, the Madison County Circuit Court's judgment of conviction and sentence entered against Christine Wilson is affirmed.

¶32. **CONVICTION OF FELONY SHOPLIFTING AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE LAST YEAR SUSPENDED, AND FIVE (5) YEARS SUPERVISED PROBATION, WITH CONDITIONS, AFFIRMED. APPELLANT SHALL PAY COURT COSTS IN THE AMOUNT OF $304.50 AND A FINE OF $1,000.00.**

**SMITH, C.J., WALLER, P.J., EASLEY, RANDOLPH AND LAMAR, JJ., CONCUR. DICKINSON, J., CONCURS IN RESULT ONLY. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶33. I cannot join the majority for a number of reasons: (1) the aiding and abetting instruction was in error and saying otherwise overrules our precedent in *Milano v. State*; (2) Harris's testimony was inadmissible because it was without foundation; and (3) it was error to sentence Wilson under the prior statute.

**(1) The Trial Court Erred by Failing to Give the Proper Aiding and Abetting Instruction.**

¶34. First, no amount of quoting *Milano* can hide that the majority has overruled that case in favor of two-decades-old precedent. *Milano* clearly states that the aiding and abetting jury instructions were "erroneous." *Milano v. State*, 790 So. 2d 179, 185 (Miss. 2001). Today's opinion, on the other hand, finds "no error." Thus, the Court's reminder to use the Fifth Circuit's instruction means nothing if we will find no error at all.

¶35. Second, *Kelly* cannot be interpreted to find that the jury instruction in question "meets our requirement that a jury instruction not simply state that a defendant merely approved of the crime." *Kelly v. State*, 493 So. 2d 356 (Miss. 1986). In *Kelly*, the instruction at least required that the defendant do "any act which is an ingredient to the crime" with the requisite intent (i.e., "knowingly, wilfully and feloniously"). The jury instructions in the present case merely require that the defendant do "any act," intended or not: "each person who was present, consenting to the commission of the crime and *doing any act* which aided, assisted

25

or encouraged the crime, is guilty to the same extent as if he committed the whole crime." (emphasis supplied).

¶36.   It is simply not enough that the defendant know of and approve of the crime to be guilty as an accessory. *Vaughn v. State*, 712 So. 2d 721, 724 (Miss. 1998) (citing *Griffin v. State*, 293 So. 2d 810, 812 (Miss. 1974)). One who is an accessory before the fact or one who aids and abets must "do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime . . . [or] participate in the design of the felony." *Id.* (quoting *Malone v. State*, 486 So. 2d 360, 363-64 (Miss. 1986)). Because the jury instruction only required that Wilson be present and approve of the crime, the instruction was erroneous, and the trial court should have given the proper aiding and abetting instruction adopted in *Milano*. *Milano*, 790 So. 2d at 185 (quoting Fifth Cir. Pattern Jury Instructions (Criminal) 2.06 (Aiding and Abetting) (Agency) (1998)).

### (2) Harris's Testimony was Inadmissible.

¶37.   I agree that Harris's testimony that "everybody knew" they were shoplifting was not hearsay but for different reasons. First, hearsay must be a statement, and "a 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." M.R.E. 801(a). Harris never testified that anyone made any statement about their intentions to shoplift or that there was any sort of nonverbal conduct evidencing such an intent. Second, even if a statement were at issue, Harris's statements were made on the stand, not "during the course and in furtherance of the conspiracy," as required under Rule 801(d)(2)(E).

26

¶38.    The issue here is that there was simply no foundation for Harris's testimony.[7] He was offering an opinion as to every person's state of mind before the crime, but he offered nothing upon which he could have reasonably relied for this opinion. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." M.R.E. 602. Additionally, "testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness . . . ." M.R.E. 701. Until the crime was underway, there was no rational basis for Harris's opinion that they "all went to steal," and the objections should have been sustained.

¶39.    The majority also confuses the abuse-of-discretion standard with the standard used for weight or sufficiency of the evidence arguments. The majority finds no reversible error by "considering the evidence in the light most favorable to the verdict" and finding there was "sufficient evidence" to support a conviction. This is not the standard. The question is whether the trial judge abused his discretion, resulting in prejudice to the accused. *Parker v. State*, 606 So. 2d 1132 (Miss. 1992) (citations omitted). The trial judge must also exercise his or her discretion within the rules of evidence. *Id.* Because there was no foundation for Harris's testimony that Wilson intended to shoplift, in violation of Rules 602 and 701, and

---

[7]While the majority notes that the defense objected based on hearsay, there were also objections because the questions called for speculation as they were based on facts not in evidence.

because this goes to prove an essential element of the crime, Wilson was certainly prejudiced by the admission of this testimony.

### (3) Wilson Should be Sentenced Under the Amended Statute.

¶40. Finally, the majority finds Section 99-19-33 and *Daniels v. State* "totally irrelevant" to and a "far cry" from the present case because the amendment changed an element of the crime and not the sentence. In my opinion, the amendment has everything to do with sentencing, and it was error for Wilson to be sentenced under the prior statute. However, because the evidence valued the goods at roughly $1,100, the jury could not have reasonably found that the value was less than $500, and thus, the error in sentencing was harmless.

### Conclusion.

¶41. Although the error in sentencing was harmless, the errors in the jury instructions and the admission of Harris's testimony as to Wilson's state of mind were significant and warrant reversal. For these reasons, I would reverse and remand the case for a new trial.

**GRAVES, J., JOINS THIS OPINION.**