# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01478-COA

TIMOTHY ALLEN WILSON A/K/A TIMOTHY WILSON  **APPELLANT**

v.

STATE OF MISSISSIPPI  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2014 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK JR. |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | RICHARD EARL SMITH JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF RECEIVING STOLEN PROPERTY AND SENTENCED, AS A HABITUAL OFFENDER, TO TEN YEARS IN THE CUSTODY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $10,000 FINE |
| DISPOSITION: | AFFIRMED - 03/22/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

WILSON, J., FOR THE COURT:

¶1. After a jury convicted Timothy Wilson of receiving stolen property, the Circuit Court of Warren County sentenced him, as a habitual offender, to serve ten years in the custody of the Mississippi Department of Corrections (MDOC) and ordered him to pay a $10,000 fine. On appeal, Wilson raises three issues, restated as follows: (1) whether the circuit court

properly instructed the jury, (2) whether his trial counsel was ineffective, and (3) whether his sentence is illegal because he was sentenced under the law in effect at the time of his offense, rather than the law as amended by House Bill 585, 2014 Miss. Laws ch. 457. For the reasons that follow, we find no error in Wilson's trial or sentence and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 2, 2012, Paul Powers witnessed two males, later identified as Wilson and Wilson's brother, use a truck to remove a utility trailer from Powers's neighbors' yard. After learning that the owners of the trailer had not given the men permission to remove it, Powers called law enforcement. Wilson and his brother were eventually arrested, indicted, and tried jointly for receiving stolen property.

¶3. During trial, Wilson presented an alibi defense, but his trial counsel failed to submit an alibi jury instruction. However, the State submitted Instruction S-3, an alibi instruction that informed the jury, among other things, that the State was not required to disprove an alibi. The circuit judge gave that instruction and Instruction S-4, a prima facie evidence instruction. Wilson's trial counsel failed to object to either of those instructions.

¶4. After the jury convicted Wilson, the circuit court imposed a ten-year sentence under the version of Mississippi Code Annotated section 97-17-70 (Rev. 2014) that was in effect at the time of Wilson's offense. Wilson timely filed a motion for a new trial, which the circuit court denied. This appeal followed.

## ANALYSIS

I.     **Jury Instructions**

¶5. We review a trial court's rulings on jury instructions for an abuse of discretion. *Thompson v. State*, 119 So. 3d 1007, 1009 (¶3) (Miss. 2013) (citing *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010)). "In reviewing jury instruction issues, this Court reads the instructions together as a whole. No reversible error will be found to exist if, when read together, the instructions correctly state the law and effectuate no injustice." *McKlemurry v. State*, 947 So. 2d 987, 990 (¶3) (Miss. Ct. App. 2006) (citing *Miller v. State*, 919 So. 2d 1137, 1141 (¶12) (Miss. Ct. App. 2005)).

### A. Instruction S-3

¶6. Wilson argues that Instruction S-3 was improper because it required him to prove the truth of his alibi defense. According to him, the absence of a proper alibi instruction prevented the jury from considering his defense. In response, the State argues that because Wilson failed to object to the jury instructions as given, this argument is barred on appeal. In the alternative, the State argues that Instruction S-3 did not shift the burden of proof to Wilson and that the jury instructions, taken as a whole, properly instructed the jury that the State bore the burden of proof beyond a reasonable doubt throughout the trial. The State also argues that it was Wilson's duty to request an alibi instruction.

¶7. While conceding that his trial counsel failed to object to Instructions S-3 and S-4,[1] Wilson asks this Court to review this issue as plain error. In *Starr v. State*, 997 So. 2d 262 (Miss. Ct. App. 2008), we explained the concept of plain error, stating:

---

[1] During the charge conference, when the circuit court inquired about Instruction S-3, Wilson's trial counsel stated, "No objections on behalf of Timothy Wilson." When the circuit court inquired about Instruction S-4, trial counsel stated, "I have no objections."

> A party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal, because it is otherwise procedurally barred. The plain-error doctrine requires a party to prove that an error occurred which resulted in a manifest miscarriage of justice. This doctrine is only available when a defendant's substantive or fundamental rights have been violated.

*Id.* at 266 (¶11) (internal citations and quotation marks omitted). A "plain error" is a ruling by the trial court that "deviated from a legal rule" in a manner that "is plain, clear or obvious." *Neal v. State*, 15 So. 3d 388, 403 (¶32) (Miss. 2009) (quoting *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007)). As discussed below, this case involves no miscarriage of justice or clear or obvious error. Therefore, this issue is procedurally barred.

¶8. At trial, Powers testified that on April 2, 2012, between 1 p.m. and 2 p.m., as he was standing in his yard, he witnessed Wilson and his brother break the lock on the utility trailer in Powers's neighbors' yard. Suspicious, Powers called his neighbors and learned that neither Wilson nor his brother had been authorized to remove the trailer. As Wilson and his brother drove away with the trailer, Powers followed in his vehicle, while contacting law enforcement. Powers provided law enforcement with the tag number on the truck that Wilson was driving.

¶9. Lieutenant Randy Lewis, the officer who responded to Powers's call, testified that, during his investigation, he learned that the truck used to remove the trailer was registered to Wilson. After Lieutenant Lewis located the truck and apprehended Wilson and his brother, he located the trailer in a nearby yard.

¶10. Wilson called two alibi witnesses: Willie Dotson and Henry Ray Hunter. Dotson testified that on the morning of April 2, 2012, he and Wilson worked together cutting trees

4

and bushes. Dotson testified that Wilson "left around [noon] or a little before [noon] for lunch and he never did come back." Wilson's trial counsel showed Dotson a photograph that depicted Wilson trimming trees in an attempt to establish that Wilson was working with Dotson when the trailer was stolen. However, Dotson's testimony, which was inconsistent, revealed that he did not know what day or time the photograph was taken.

¶11. Hunter testified that on the morning of April 2, 2012, Wilson was also helping him repair a house. "[H]e was going back and forth" between the house and his work cutting trees. According to Hunter, Wilson left for lunch at noon and did not return. Hunter made it clear that on April 2, 2012, Wilson did not work with him after lunch.

¶12. As stated, Wilson failed to submit a proposed alibi instruction, but the circuit judge gave Instruction S-3, which stated:

> [T]he State is not required to disprove an alibi. In other words, the State is not required to prove that any alibi defense is not true; the State is only required to prove, beyond a reasonable doubt, that the defendants, Randy Charles Wilson and Timothy Allen Wilson, are guilty, beyond a reasonable doubt, of Receiving Stolen Property as charged.

¶13. Wilson cites *Holmes v. State*, 481 So. 2d 319 (Miss. 1985), as support for his argument that the alibi instruction submitted by the defendant in that case is the instruction that should have been given to the jury in this case. However, in *Holmes* the issue was not whether the alibi instruction given to the jury was improper or inadequate. Instead, the issue was whether, after the State and the defendant submitted proposed alibi instructions, the trial judge erred by completely failing to give one. *Id.* at 323. There, the trial judge refused the instructions "based on the weakness of the evidence which supported the alibis." *Id.* at 321.

On appeal, our Supreme Court reversed and remanded for a new trial "[d]ue to the failure of the trial [judge] to properly instruct the jury with reference to the defendant's theory of alibi and the failure to caution the jury regarding accomplice testimony." *Id.* at 320. Here, in contrast, Wilson failed to proffer an alibi instruction, and the circuit judge had no duty to sua sponte instruct the jury on Wilson's alibi defense. *See Westbrook v. State*, 29 So. 3d 828, 832-33 (¶12) (Miss. Ct. App. 2009).

¶14. We further note that Instruction S-3 is consistent with—and Wilson's argument is in direct conflict with—footnote one of the *Holmes* opinion, which stated:

> Harvey Holmes's alibi instruction improperly stated that it was the government's burden to convince the jury that his alibi was not true. The state is *not* required to disprove a defendant's alibi; its burden is simply to prove the defendant's guilt beyond a reasonable doubt.

*Holmes*, 481 So. 2d at 320 n.1. Even if there were some defect in the State's instruction, we would be hard-pressed to find that a trial judge committed clear or obvious error by giving an instruction that substantially tracks reasoning from a Supreme Court opinion. *See Green v. State*, 183 So. 3d 28, 30-32 (¶¶6-10) (Miss. 2016).

¶15. As to Wilson's argument that Instruction S-3 shifted the burden of proof to him, several other instructions informed the jury that the State bore the burden of proof beyond a reasonable doubt. Instruction S-7 stated, in relevant part: "If, however, you find that the State has failed to prove any one, or more, of the elements [of receiving stolen property] beyond a reasonable doubt, then you shall find Timothy Allen Wilson not guilty." Instruction D-2 stated: "If you find from the evidence that the State has failed to prove beyond a reasonable doubt any one of the essential elements of the crime of receiving stolen property,

6

you must find Timothy Allen Wilson not guilty." Instruction D-4 provided, in part: "The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving each defendant separately guilty of every material element of the crime with which they are charged." D-4 also provided: "The presumption of innocence attends each defendant throughout the trial and prevails at the close unless overcome by evidence that satisfies the Jury of their separate guilt beyond a reasonable doubt." Finally, Instruction D-13 stated, in relevant part: "If the State fails to prove beyond a reasonable doubt any one of the essential elements of the crime of receiving stolen property, you must find Timothy Allen Wilson not guilty." Thus, the jury was instructed thoroughly on the State's burden of proof and that Wilson bore no such burden.

¶16. As stated, we review the jury "instructions together as a whole" and will not find reversible error if, "when read together, the instructions correctly state the law and effectuate no injustice." *McKlemurry*, 947 So. 2d at 990 (¶3) (citing *Miller*, 919 So. 2d at 1141 (¶12)). Here, the instructions, read as a whole, adequately informed the jury that the State bore the burden of proof. Neither Instruction S-3 nor the absence of a different alibi instruction prevented the jury from considering Dotson's and Hunter's testimonies and determining whether Wilson had an alibi. "[T]he jury determines the weight and credibility to give witness testimony and other evidence and is not required to believe alibi testimony." *Sanders v. State*, 162 So. 3d 868, 871 (¶18) (Miss. Ct. App. 2015) (citation and quotation marks omitted). This issue is without merit and certainly does not rise to the level of plain error.

**B.     Instruction S-4**

7

¶17. Wilson argues that Instruction S-4, which tracks the language found in Mississippi Code Annotated section 97-17-70(3)(b), was prejudicially defective because it lessened the State's burden of proof. He insists that the instruction violated his right to due process because it allowed the jury to infer that he knew the trailer was stolen. Wilson further argues that the statutory language in Instruction S-4, namely the phrase "prima facie evidence," confused the jury because it is legal jargon "clearly inserted into the statute to guide trial judges on deciding the sufficiency of the evidence when challenged by a motion for [a] directed verdict." He also argues that even if the jury knew what the phrase "prima facie" meant, the instruction failed to inform the jury that a prima facie case is rebuttable. Also, he argues that Instruction S-4 was an impermissible comment by the circuit court on the evidence.

¶18. In response, the State again argues that Wilson's trial counsel's failure to object to Instruction S-4 bars his arguments on appeal. Alternatively, the State argues that the instruction did not reduce its burden of proof, as evidenced by the fact that other jury instructions informed the jury that the State was required to prove every element of the crime beyond a reasonable doubt. The State asserts that the language in Instruction S-4 was an accurate statement of the law and that the instruction did not emphasize any specific testimony. The State further argues that any error caused by Instruction S-4 was harmless, because the overwhelming weight of the evidence was sufficient to support Wilson's conviction.

¶19. Instruction S-4 instructed the jury that "proof that a defendant stole the property that

8

is the subject of the charge against him, or her, shall be prima facie evidence that the defendant had knowledge that the property was stolen." Even if we were to assume for purposes of this appeal that Instruction S-4 should not have been given, Instruction S-7, an elements instruction, instructed the jury:

> Timothy Allen Wilson is charged with Receiving Stolen Property.
>
> . . . [I]f you find from the evidence in this[] case beyond a reasonable doubt, that Timothy Allen Wilson on, or about, April 2, 2012 in Warren County, Mississippi:
>
>> 1. Intentionally possessed a sixteen-foot tandem-axle utility trailer while knowing that said utility trailer was stolen, or having reasonable grounds to believe that it was stolen; and
>>
>> 2. Was not in possession of the utility trailer with the intent to return it to [its owners]; and
>>
>> 3. The utility trailer was valued at more than $500.00,
>
> Then, and in that event, the defendant Timothy Allen Wilson is guilty of Receiving Stolen Property and it is your sworn duty to so find.
>
> If, however, you find that the State has failed to prove any one, or more, of the elements listed above, beyond a reasonable doubt, then you shall find Timothy Allen Wilson not guilty.

Thus, S-7 fully instructed the jury on the elements that the State had to prove in this case. In addition, as discussed above, several instructions thoroughly instructed the jury on the State's burden of proof. Under these circumstances, we cannot conclude that the trial court committed plain or obvious error by accurately quoting the relevant statute, or that any miscarriage of justice resulted.

## II.    Ineffective Assistance of Counsel

9

¶20. Wilson argues that his trial counsel was ineffective because counsel failed to object to Instructions S-3 and S-4 and because he failed to submit an alibi instruction. The State responds that this Court should not address Wilson's ineffective assistance claim on direct appeal. In the alternative, the State argues that the claim is without merit and that Wilson's trial counsel was not ineffective for failing to object to Instructions S-3 and S-4 or for failing to request an alibi instruction. The State contends that Wilson's counsel's omissions "may have been trial strategy" and did not prejudice Wilson's defense.

¶21. Our Supreme Court has explained:

> Generally, ineffective assistance claims are more appropriately brought during post-conviction proceedings. This is because on direct appeal the Court is limited to the trial court record in its review of the claim. Where the record lacks sufficient evidence to adequately address the claim, this Court should deny relief, preserving the defendant's right to argue the issue through a post-conviction-relief petition. This Court may, however, address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record.

*Parker v. State*, 30 So. 3d 1222, 1232 (¶36) (Miss. 2010) (internal citations and quotation marks omitted). In this case, Wilson's ineffective assistance claim is based on facts that are fully apparent on the record, so we will address it on direct appeal.

¶22. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a

10

result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Stated differently, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶23. In *Taylor v. State*, 109 So. 3d 589 (Miss. Ct. App. 2013), the defendant alleged that his trial counsel was ineffective for failing to request an alibi instruction. *Id.* at 598 (¶27). There, we held that the defendant failed to overcome the presumption that the omission was trial strategy. *Id.* We also found that it was "conceivable" that, after hearing the testimonies of the defendant's alibi witnesses, trial counsel had abandoned the alibi defense. *Id.* For this reason, we were unable to conclude that counsel's failure to request an alibi instruction was beyond the range of reasonable trial strategy. *Id.* As in *Taylor*, Wilson's trial counsel may well have abandoned the alibi defense after hearing Dotson's and Hunter's testimonies. But even without an alibi instruction, the jury was still able to consider their testimonies and to find that there was reasonable doubt as to whether Wilson was guilty of receiving stolen property. Accordingly, Wilson fails to show that his trial counsel was constitutionally ineffective for failing to request an alibi instruction or that he suffered any prejudice as a result. The same is true of Wilson's contention that his trial counsel should have objected to the State's alibi instruction, which, as noted above, is consistent with the Supreme Court's opinion in *Holmes*.

¶24. With respect to trial counsel's failure to object to Instruction S-4—the "prima facie

evidence" instruction—we have already discussed above that, in multiple instructions, the jury was instructed thoroughly on the State's burden to prove each and every element of the offense charged. Therefore, even if we were to assume that counsel should have objected to S-4, Wilson cannot show that there is a "reasonable probability" that this one instruction altered the result of the proceeding. *Strickland*, 466 U.S. at 694. Accordingly, his ineffective assistance claim necessarily fails.

### III. Sentencing

¶25. Wilson committed the offense of receiving stolen property on April 2, 2012. He was indicted on January 23, 2013. The indictment charged him with receiving stolen property that had "a value in excess of $500.00." Prior to Wilson's trial, the Legislature amended subsection 97-17-70(4) to change the $500 threshold to a range of more than $1,000 but less than $5,000 and to reduce the maximum punishment. *See* 2014 Miss. Laws ch. 457, § 22. However, the jurors at Wilson's trial were instructed that in order to convict him, they had to find beyond a reasonable doubt that the utility trailer he was charged with receiving "was valued at more than $500." The jury so found and convicted Wilson. Finally, Wilson was sentenced under the version of the statute in effect at the time he committed his offense, which provided that "[a]ny person . . . convicted of receiving stolen property which exceeds Five Hundred Dollars ($500.00) in value shall be committed to the custody of [MDOC] for a term not exceeding ten (10) years . . . ." Miss. Code Ann. § 97-17-70(4) (Rev. 2007). He was sentenced to the statutory maximum of ten years' imprisonment because he is a habitual offender.

¶26.    Although the Legislature amended the statute under which Wilson was convicted prior to his trial, the circuit court's decision to conduct his trial and sentencing under the prior version of the statute was in accordance with applicable law.  Mississippi Code Annotated section 99-19-1 (Rev. 2015) provides:

> No statutory change of any law affecting a crime or its punishment or the collection of a penalty shall affect or defeat the prosecution of any crime committed prior to its enactment, or the collection of any penalty, whether such prosecution be instituted before or after such enactment; and all laws defining a crime or prescribing its punishment, or for the imposition of penalties, shall be continued in operation for the purpose of providing punishment for crimes committed under them, and for collection of such penalties, notwithstanding amendatory or repealing statutes, unless otherwise specially provided in such statutes.

Accordingly, in general, the version of the statute in effect at the time an offense is committed will continue to control the defendant's prosecution *and his punishment*.

¶27.    There is an exception to the rule set out in section 99-19-1.  Mississippi Code Annotated section 99-19-33 (Rev. 2015) provides:

> If any statute shall provide a punishment of the same character, but of milder type, for an offense which was a crime under pre-existing law, then such milder punishment may be imposed by the court but no conviction, otherwise valid, shall be set aside and new trial granted merely because of an error of the court in fixing punishment.  Such error shall only entitle the party injured to vacate or reverse the judgment as to the punishment, and the legal punishment shall then be imposed by another sentence based on the original conviction or plea of guilty.

Further, interpreting section 99-19-33, our Supreme Court has made clear that "when a statute is amended to provide for a lesser penalty, and the amendment takes effect before sentencing, the trial court *must* sentence according to the statute as amended."  *Daniels v.*

13

*State*, 742 So. 2d 1140, 1145 (¶17) (Miss. 1999) (emphasis added).[2]

¶28.　However, in a more recent decision, the Supreme Court made clear that "section 99-19-33 and *Daniels* are totally irrelevant to" a "case where we are not dealing with an amended sentencing statute, but instead an amended statute as it relates to the elements of the offense." *Wilson v. State*, 967 So. 2d 32, 42 (¶22) (Miss. 2007). *Wilson* was a shoplifting case. The defendant in that case was indicted and found guilty of shoplifting merchandise priced at more than $250, a felony punishable by up to five years' imprisonment at the time she committed the crime. After she was indicted but before she was tried, the Legislature amended the shoplifting statute to provide that felony shoplifting required proof that the defendant took merchandise priced at more than $500—and that shoplifting $500 or less of merchandise was punishable as a misdemeanor. The defendant argued that under section 99-19-33 and *Daniels*, she was entitled to the benefit of the amendment—i.e., to be sentenced for the misdemeanor instead of the felony. *See id.* at 41-42 (¶21). The Supreme Court disagreed. In its brief discussion of the issue, the Court reasoned that "section 99-19-33 and *Daniels* [were] totally irrelevant to" Wilson's case because "only the elements of the crime of felony shoplifting changed and not the penalty, which ha[d] remained the same during [the] amendment process." *Id.* at 42 (¶22).[3]

---

[2] On appeal, the State effectively argues that we should overrule *Daniels* because, in the State's view, its holding conflicts with the plain language of the statute. However, "this Court lacks authority to overrule Mississippi Supreme Court precedent." *Hudson v. WLOX Inc.*, 108 So. 3d 429, 432 (¶10) (Miss. Ct. App. 2012).

[3] The Supreme Court recently applied *Wilson*'s holding to the more recent amendments to the same statute. *See Moore v. State*, No. 2015-KA-00207-SCT, 2016 WL 347624, at *4-*5 (¶¶14-16) (Miss. Jan. 28, 2016) (holding that the $500 threshold in effect

¶29.    The instant case is distinguishable from *Wilson* in that, after Timothy Wilson committed his crime but before he was sentenced, the Legislature amended *both* the elements of the crime of receiving stolen property *and* the applicable penalties.  Thus, unlike *Wilson*, it cannot be said that "*only* the elements of the crime" were changed.  *Id.* (emphasis added).  However, for the same reason, the instant case is also distinguishable from *Daniels* and other cases that involved only amendments to punishments.  *See Daniels*, 742 So. 2d at 1144 (¶13).  Although neither case is directly on point, we are persuaded that *Wilson* and section 99-19-1, *supra*, are controlling.  We reach this conclusion because, for the reasons explained below, it is impossible to retroactively apply the amendments to the punishments for receiving stolen property without also retroactively applying the amendments to the elements of the offense.  The amendments to the elements and the amendments to the punishments are inextricably interrelated.  Because *Wilson* and section 99-19-1 make clear that we may not retroactively apply amendments to the elements of the crime, we conclude that we cannot apply interrelated amendments to its punishments either.

¶30.    House Bill 585, 2014 Miss. Laws ch. 457, § 22, amended the relevant parts of section 97-17-70 as follows:

---

at the time the offense was committed—not the $1,000 threshold in effect at the time of trial—remained applicable to the defendant's prosecution for felony shoplifting).

15

| Prior to July 1, 2014: | As amended, effective July 1, 2014: |
|---|---|
| (4) Any person who shall be convicted of receiving stolen property which exceeds Five Hundred Dollars ($500.00) in value shall be committed to the custody of the State Department of Corrections for a term not exceeding ten (10) years . . . . | (4) Any person who shall be convicted of receiving stolen property which exceeds One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5,000.00) in value shall be punished by imprisonment . . . for a term not exceeding five (5) years . . . .<br><br>(5) Any person who shall be convicted of receiving stolen property which exceeds Five Thousand Dollars ($5,000.00) or more but less than Twenty-five Thousand Dollars ($25,000.00) in value shall be punished by imprisonment . . . for a term not exceeding ten (10) years . . . .<br><br>(6) Any person who shall be convicted of receiving stolen property which exceeds Twenty-five Thousand Dollars ($25,000.00) in value shall be punished by imprisonment . . . for a term not exceeding twenty (20) years . . . . |
| (5) Any person who shall be convicted of receiving stolen property which does not exceed Five Hundred Dollars ($500.00) in value shall be punished by imprisonment for not more than six (6) months . . . . | (7) Any person who shall be convicted of receiving stolen property which does not exceed One Thousand Dollars ($1,000.00) in value may be punished by imprisonment in the county jail for not more than six (6) months . . . . |

¶31. Here, as described above, Wilson was indicted and the jury convicted him of the crime of receiving stolen property with a value in excess of *$500*. Under the statute as amended, that crime no longer exists. There is a crime of receiving stolen property valued at more than $1,000 and less than $5,000. And there is another crime of receiving stolen property valued at $1,000 or less. But there is no longer a crime of receiving stolen property valued at more

16

than $500.

¶32. There are at least two ways that we could go about trying to apply the amendments to section 97-17-70 to Wilson's case. First, we could apply the new statute based on the jury's actual finding that Wilson received stolen property with a value of more than $500. But if we take that route, Wilson's felony offense is transformed into a misdemeanor punishable by no more than six months in the county jail. *See* Miss. Code Ann. § 97-17-70(7). Such a result is directly foreclosed by the Supreme Court's decision in *Wilson*, 967 So. 2d at 41-42 (¶¶21-22).

¶33. Alternatively, we could conduct our own review of the evidence, decide the value of the trailer, and then re-sentence Wilson under the amended statute. This is what the dissent[4] would do. The dissent believes this is permissible because "the State offered proof that the trailer was valued at $1,500." *Post* at (¶47). The dissent then applies the amended statute to this valuation to arrive at a new sentence of five years' imprisonment.

¶34. Of course, the dissent's starting premise is not based on any finding by the jury. It stands on Paul Powers's lay opinion that the trailer was worth $1,500. The trailer's owner testified that she purchased it for $1,400 three years prior to the theft. The jury found *only* that the trailer was worth more than $500. That finding tells us nothing about whether the jury found that the trailer was worth $500.01 or $1,500 or some other amount. "Absent knowledge of the jury's finding, we lack the omniscient power to ascertain what [value the

---

[4] The separate opinion concurs with this opinion except on the issue of which version of the statute applies to Wilson's sentence. Because our references to the separate opinion relate to that issue only, we refer to the separate opinion as "the dissent."

jury assigned to the trailer].” *Sears, Roebuck & Co. v. Learmonth*, 95 So. 3d 633, 639 (¶8) (Miss. 2012). The jury easily could have concluded that the trailer was no longer worth the $1,400 paid for it three years earlier and yet still found that it was worth more than $500. It is within “the jury’s province to make independent determinations on such matters, which may be based upon its ‘common experience,’ ‘reason,’ and ‘common sense.’” *Id.* at 638 n.7. Indeed, it is unlikely that the jury assigned *any* particular value to the trailer because it was *only* required to find that it was worth more than $500.

¶35.    Thus, in order to apply the amended version of the statute, the dissent engages in appellate fact-finding on an essential element of the crime for which it would re-sentence Wilson. Though the question was never presented to the jury, the dissent finds that “the weight of the evidence shows that the value of the property was more than $1,000.” *Post* at (¶48). *But see Harrell v. State*, 134 So. 3d 266, 273 (¶25) (Miss. 2014) (“[A]ppellate courts may use harmless error to preserve, *but not supplement*, a jury’s findings.”). Having done so, the dissent would then impose a five-year sentence—even though, under the amended statute, the jury’s verdict would authorize no more than six months in the county jail. *See* Miss. Code Ann. § 97-17-70(7). *But see Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”).[5]

---

[5] The amended statute authorizes a ten-year sentence if the value of the property stolen exceeds $5,000 but is less than $25,000. *See* Miss. Code Ann. § 97-17-70(5). Thus, the dissent presumably would affirm a ten-year sentence if it could find that the “weight of the evidence” showed the trailer to be worth more than $5,000. Therefore, the essence of

¶36.   The dissent dismisses this problem of appellate fact-finding by asserting that the value of the trailer is not really a "core element[] of the offense of receiving stolen property." *Post* at (¶45).  According to the dissent, it is just an "element[] for sentencing purposes only." *Post* at (¶45).  The distinction lacks substance—the U.S. Supreme Court has referred to it as "the constitutionally novel and elusive distinction between 'elements' and 'sentencing factors.'" *Apprendi*, 530 U.S. at 494.  "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  *Id.*; *see also Patton v. State*, 34 So. 3d 563, 573 (¶33) (Miss. 2010) ("Because the false pretense statute provides different levels of punishment depending on the value of the property obtained by means of the false representation, value is an *essential element* of the crime of felonious false pretense." (emphasis added) (citing *Henley v. State*, 729 So. 2d 232, 238 (Miss. 1998))).  Obviously, if the dissent were correct that the amended statute applied in this case, then the dissent's finding regarding the trailer's value would expose Wilson to a greater punishment than that authorized by the jury's verdict—in fact, it would increase his sentence tenfold.

¶37.   At other points, the dissent seems to say that the amended version of section 97-17-70 must be applied because—regardless of the nature or extent of the amendments—"receiving stolen property" was "an offense" before and it still is today.  *Post* at (¶¶50, 52).  This argument also elevates form over substance.  An "offense" is not defined by its location or

the dissent's argument is that a defendant convicted under the prior version of section 97-17-70(4) is entitled to the milder punishment in the amended section 97-17-70(4) *unless this Court finds that the stolen property was worth more than $5,000.  But see Apprendi*, 530 U.S. at 490.

19

heading in the Mississippi Code. An offense is defined by its elements—it is simply the "sum of its elements."[6] The "offense" defined in the amended version of subsection 97-17-70(4) is not the same offense defined in the prior version simply because it is set out in the same place under the same heading. As the comparison set out in the table above shows, there is no longer one felony offense of receiving stolen property—there are now *three different and new* felony offenses, each of which requires proof that the defendant received property within a different range of dollar values. Section 99-19-33 applies and permits sentencing under the amended version of the statute "for an offense which was a crime under pre-existing law." Miss. Code Ann. § 99-19-33. In this case, however, the offenses now codified in section 97-17-70 have different elements and are not the same offenses as contained in the statute prior to July 1, 2014.

¶38. Ultimately, the dissent seems to misapprehend the point of much of the foregoing discussion. The dissent believes that we decline to apply the amended version of the statute only "because we do not know the precise value that the jury placed on the stolen property." *Post* at (¶49). However, the reason that we decline to apply retroactively the punishments set out in the amended version of the statute is that it is impossible to do so without also

---

[6] *Mabry v. State*, 248 Miss. 149, 151, 158 So. 2d 688, 689 (1963) ("The jury should be instructed properly as to the nature and elements of the offense charged, and the court must define and explain the crime charged, setting forth the essential elements thereof." (internal quotation marks omitted)); *Apprendi*, 530 U.S. at 500-01 (Thomas, J., concurring); *United States v. Williams*, 343 F.3d 423, 432 (5th Cir. 2003) ("Traditionally, an 'offense' was defined by its 'elements' . . . ."); *United States v. Parker*, 165 F. Supp. 2d 431, 450 (W.D.N.Y. 2001) ("It is black letter law that a crime is defined by its elements."); *Fearance v. State*, 771 S.W.2d 486, 522 (Tex. Crim. App. 1988) ("Statutory crimes are comprised of elements. A crime is identified by the sum of its elements.").

applying retroactively the new elements of the amended version of the statute. Such a retroactive application of the amended statute is not permitted under section 99-19-1 or *Wilson*, 967 So. 2d at 41-42 (¶¶21-22). We have discussed the dissent's need to supplement the jury's verdict with appellate fact-finding because it raises constitutional concerns—but, more important, because it illustrates the interrelationship of the various amendments.

¶39.    The dissent also asserts that we "fail[] to give effect to the will of the law-making body of this State" because "our Legislature has spoken with great clarity that the punishment should not be more than five years in prison." *Post* at (¶49). With respect, this assertion simply begs the question. To be sure, there is "great clarity" that the Legislature intended to reduce sentences in some *prospective* prosecutions under section 97-17-70, but no one contends that the Legislature intended the amendments to apply in *all* cases, past and pending. For example, no one argues that a defendant sentenced prior to July 1, 2014, is entitled to a new sentence based on a new determination of the value of the property he received. Nor is there any "great clarity" that the Legislature intended for the amendments to apply retroactively to pending prosecutions, such as this one. The Legislature could have "specially provided in" House Bill 585 for such retroactive application of the amendments at issue (Miss. Code Ann. § 99-19-1), but it did not do so. In the absence of such specific guidance from the Legislature, the Court's task is to determine whether the amendment applies retroactively—to determine "intent"—based on the default rules discussed above.[7]

---

[7] "It must be presumed, not only that the Legislature was familiar with its own enactments and with the constructions which this court had placed upon those enactments, but also conversant with the rulings of this court . . . ." *Ascher & Baxter v. Edward Moyse & Co.*, 101 Miss. 36, 57 So. 299, 304 (1912).

Having done so, we conclude that, pursuant to section 99-19-1 and *Wilson*, retroactive application of these amendments was not intended.

¶40.    In summary, under section 99-19-1 and *Wilson*, 967 So. 2d at 41-42 (¶¶21-22), we do not retroactively apply amendments to the elements of a criminal statute. Here, House Bill 585's amendments to section 97-17-70's elements and punishments are inextricably interrelated. Consequently, there is no viable approach to applying those amendments to defendants whose offenses were committed and charged prior to House Bill 585's effective date. To re-sentence such defendants based solely on the jury's findings would run afoul of the Supreme Court's holding in *Wilson*. And to re-sentence such defendants based on our own appellate fact-finding would raise serious constitutional concerns. This is a significant issue because House Bill 585 amended a variety of criminal statutes in a similar manner. We decline to adopt an approach to such amendments that inevitably will lead to such difficulties. We conclude that the circuit judge correctly avoided these problems by applying the version of the statute in effect when Wilson committed his offense.

¶41.    **THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF RECEIVING STOLEN PROPERTY AND SENTENCE, AS A HABITUAL OFFENDER, OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $10,000 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.**

**GRIFFIS, P.J., CARLTON, FAIR AND GREENLEE, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, C.J., BARNES, ISHEE AND JAMES, JJ.**

**IRVING, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶42. I agree and concur with the majority's resolution of all issues except Issue III, which addresses the appropriate sentencing statute to be applied. The majority finds that Wilson was properly sentenced under the penalty statute for receiving stolen property that was in effect at the time that he committed the offense. Because I believe that Wilson should have been sentenced under the amended penalty statute that was in effect at the time that Wilson was sentenced, I dissent. For the reasons that I will explain, I would affirm his conviction but modify his sentence in accordance with the new penalty statute for receiving stolen property and sentence him to five years in the custody of the Mississippi Department of Corrections and a fine of $10,000.

¶43. Mississippi Code Annotated section 97-17-70(1) (Rev. 2014) defines the crime of receiving stolen property as follows:

> A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.

This was the definition of the crime of receiving stolen property at the time that Wilson was indicted for and convicted of that offense, and that was the definition at the time the circuit judge sentenced him.

¶44. At the time of Wilson's indictment, the penalty portions of section 97-17-70, subsections three and four, read as follows:

> (3) Any person who shall be convicted of receiving stolen property which exceeds Five Hundred Dollars ($500.00) in value shall be committed to the custody of the State Department of Corrections for a term not exceeding ten (10) years or by a fine of not more than Ten Thousand Dollars ($10,000.00),

23

or both.

> (4) Any person who shall be convicted of receiving stolen property which does not exceed Five Hundred Dollars ($500.00) in value shall be punished by imprisonment for not more than six (6) months or by a fine of not more than One Thousand Dollars ($1,000.00), or both.

At the time of Wilson's sentencing, the statute had been amended and renumbered to add some additional provisions, not relevant to the issue before us, and its penalty provisions had been reordered and expanded to provide for a more graduated penalty as follows:

> (4) Any person who shall be convicted of receiving stolen property which exceeds One Thousand Dollars ($1,000.00) or more, but less than Five Thousand Dollars ($5,000.00) in value shall be punished by imprisonment in the custody of the State Department of Corrections for a term not exceeding five (5) years or by a fine of not more than Ten Thousand Dollars ($10,000.00), or both.
>
> (5) Any person who shall be convicted of receiving stolen property which exceeds Five Thousand Dollars ($5,000.00) or more but less than Twenty-five Thousand Dollars ($25,000.00) in value shall be punished by imprisonment in the custody of the State Department of Corrections for a term not exceeding ten (10) years or by a fine of not more than Ten Thousand Dollars ($ 10,000.00), or both.
>
> (6) Any person who shall be convicted of receiving stolen property which exceeds Twenty-five Thousand Dollars ($25,000.00) in value shall be punished by imprisonment in the custody of the State Department of Corrections for a term not exceeding twenty (20) years or by a fine of not more than Ten Thousand Dollars ($10,000.00), or both.
>
> (7) Any person who shall be convicted of receiving stolen property which does not exceed One Thousand Dollars ($1,000.00) in value may be punished by imprisonment in the county jail for not more than six (6) months or by a fine of not more than One Thousand Dollars ($1,000.00), or both . . . .

Miss. Code Ann. § 97-17-70(4)-(7) (Rev. 2014).

¶45. It is immediately clear from even a casual reading of section 97-17-70 that the

language in subsections four through seven does not constitute any of the core elements of the offense of receiving stolen property. Rather, the core elements are set forth in subsection one, and subsections four through seven provide a graduated or enhanced punishment for the crime of receiving stolen property based on the value of the property received. Stated another way, the language in subsections four through seven speaks to the gravity of the offense for the purpose of assessing punishment, not to the core elements constituting the offense itself. This is a reasonable interpretation in light of the definition of the crime of receiving stolen property that is provided in subsection one—which does not reference or rely upon any other subsection for its completeness. So if the language in subsections four through seven depicts the statutory elements of the crime of receiving stolen property, that language must necessarily implicate elements for sentencing purposes only.[8] This regimented punishment scheme is similar to the enhanced punishment scheme provided elsewhere in our law for various crimes—for example, the crime of the sale of cocaine within so many feet of certain designated places. Is the crime of the sale of cocaine not committed if the sale takes place beyond the boundaries and places that lead to the enhanced punishment? Of course, it is.

¶46. Prior to the amendment, it was not necessary to state in the indictment the specific value of the property to determine the penalty for the crime of receiving stolen property. It was sufficient simply to charge that the value of the property was either less than or more

---

[8] I do not contend that a jury is not required to find that a defendant received stolen property in a specific value range before the defendant may be sentenced to the penalty for that value range.

25

than $500, even if the value of the property was $10 or $10,000. At the subsequent trial, the State only had to prove that the value of the property was within the range stated in the indictment, which determined the penalty. After the amendment, it is not necessary to state in the indictment the specific value of the property. The indictment is sufficient if a value range is included. However, as was the case prior to the amendment, at trial, the State must prove that the value of the property falls within the range stated in the indictment, which also determines the penalty.

¶47. In this case, the State offered proof that the trailer was valued at $1,500.[9] There was no testimony to the contrary as to the value of the trailer. The penalty portion of the amended statute requires that a person committing the crime of receiving stolen property valued at $1,500 should be sentenced to the Mississippi Department of Corrections for a term of imprisonment not exceeding five years or to pay a fine of not more than $10,000, or both. The majority reasons that Wilson is not entitled to this lesser sentence because applying the lesser sentence would require retroactive application of the amendments to the elements of the offense. This, the majority reasons, is prohibited by *Wilson*. Therefore, according to the majority, the old sentencing statute must be applied.

¶48. The fallacy of the majority's reasoning is readily apparent. First, under the pre-amended version of the penalty statute, knowledge of the precise value that a jury placed on

_____

[9] This value was given by Paul. He testified that the trailer was a sixteen-foot tandem axle and that he was familiar with the price of trailers at that time because he had priced them many times. He further explained that he had not purchased one himself because he could always borrow his father-in-law's or his neighbor's trailer. The owner did not offer a current value for the trailer, but testified that she had purchased it for $1,400.

26

the stolen property was not a prerequisite to applying the appropriate sentence. All that was required was that the jury determine that the value fell within a certain range. So since, under the pre-amended version of the penalty statute, knowledge of the precise value that a jury placed on the stolen property was not a prerequisite to applying the appropriate sentence, why should there be this requirement under the amended version? Nothing in the amended statute requires it. Second, we know that the jury found that Wilson received stolen property valued at between $500.01 and either $1,400 or $1,500. We know this because the jury found him guilty, and to do so, it was required to find that the value of the property was more than $500, and the only evidence of the value of the property came from two witnesses. One gave the three-year-old purchase price of the property, and the other put the value of the property, at the time it was taken, at $1,500. So to say that the jury found that Wilson received stolen property valued at between $500.01 and either $1,400 or $1,500 is not tantamount to engaging in appellate fact-finding. Nevertheless, I do not disagree with the majority that we cannot know with specificity the precise value that the jury assessed to the property. But that does not matter because we know the range of the value. And because we know the range of the value, based on the evidence adduced at trial, we can say confidently that Wilson should have been sentenced to either (1) six months of imprisonment or a fine of not more than $1,000, or both, or (2) not more than five years of imprisonment or to a fine of not more than $10,000, or both. One might ask: why then do I find that the appropriate sentence is five years and a fine of $10,000. My answer is because Wilson was properly convicted as a habitual offender, and the weight of the evidence shows that the value of the property was

more than $1,000, rather than less.

¶49. On the other hand, the majority finds that simply because we do not know the precise value that the jury placed on the stolen property, the appropriate sentence is ten years. To my mind, it is illogical to say that—because we do not know whether Wilson should have been sentenced to six months' imprisonment or five years' imprisonment—the appropriate sentence is ten years' imprisonment. Further, it is clear that by its amendment of section 97-17-70, the Mississippi Legislature has determined that the penalty for the crime of receiving stolen property should relate to and be commensurate with the value of the stolen property that a person has received. Unfortunately, the majority fails to give effect to the will of the law-making body of this State by finding that one convicted of receiving stolen property valued at between $500.01 and either $1,400 or $1,500 can be sentenced up to ten years in prison, when our Legislature has spoken with great clarity that the punishment should not be more than five years in prison.

¶50. I acknowledge that reconciling the penalty for Wilson's crime under the old sentencing statute with the penalty for that crime under the amended sentencing statute cannot be done with precision, which is what the majority seems to require, but I see no reason why that is required, as I will attempt to explain in the following discussion. Mississippi Code Annotated section 99-19-33 (Rev. 2015) provides:

> If any statute **shall provide a punishment of the same character, but of milder type,** *for an offense which was a crime under pre-existing law,* **then such milder punishment may be imposed** by the court but no conviction, otherwise valid, shall be set aside and new trial granted merely because of an error of the court in fixing punishment. Such error shall only entitle the party injured to vacate or reverse the judgment as to the punishment, and the legal

28

punishment shall then be imposed by another sentence based on the original conviction or plea of guilty.

(Emphasis added). So the first question to ask in our case is: what is the offense that was a crime under pre-existing law? Is it the offense of receiving stolen property? The answer is an unequivocal "yes," because, as stated:

A person commits the crime of receiving stolen property if he intentionally possesses, receives, retains or disposes of stolen property knowing that it has been stolen or having reasonable grounds to believe it has been stolen, unless the property is possessed, received, retained or disposed of with intent to restore it to the owner.

Miss. Code Ann. § 97-17-70(1) (Rev. 2014). The next question that must be asked is: does section 97-17-70 now provide a punishment of the same character, but of a milder type for the crime of receiving stolen property? Again the answer is a resounding "yes." I now take a look at the relevant caselaw.

¶51. In *Daniels*, the Mississippi Supreme Court held "that when a statute is amended to provide for a lesser penalty, and the amendment takes effect before sentencing, the trial court *must* sentence according to the statute as amended. Any precedent holding otherwise is without merit." *Daniels v. State*, 742 So. 2d 1140, 1145 (¶17) (Miss. 1999) (emphasis added). Then, in *Coleman v. State*, 971 So. 2d 637, 643 (¶11) (Miss. Ct. App. 2007) (internal citations omitted), this Court held:

Under [section 99-19-33], where the statutory penalty for a crime is lessened between the time of the commission of the crime and sentencing, it is proper to apply the lesser sentence. Such an error in sentencing allows for reversal of the punishment portion of the judgment. Furthermore, an excessive sentence should be corrected by amendment of the invalid sentence, not by discharge of the prisoner.

29

And in *Wilson v. State*, 967 So. 2d 32, 42 (¶22) (Miss. 2007), while discussing an unrelated issue, the supreme court made it clear that section "99-19-33 and *Daniels* stand for the proposition that when the statutory penalty for a particular crime is legislatively reduced after the date of the commission of the crime but before the date of sentencing, the trial court must sentence the defendant under the amended statute." So the circuit court erred in failing to sentence Wilson under the amended version of section 97-17-70.

¶52. The majority says that I am engaging in impermissible appellate fact-finding by finding that Wilson now can be sentenced under the amended sentencing statute because the crime for which he was convicted of is now nonexistent. What the majority fails to take fully into account is that an amendment that moves the threshold-value amount of the stolen property to a different level that serves only to demarcate the crime between a misdemeanor and a felony and to provide graduated penalties does not eliminate the prior existence of the crime and the attendant penalties. But more importantly, the crime for which Wilson was convicted still exists, as receiving stolen property is still a crime in this state, and receiving stolen property valued at more than $500 is still a crime in this state.

¶53. Also, the majority apparently believes that the Mississippi Supreme Court could not have meant what it said in *Daniels* and made clear in *Wilson*: "[S]ection 99-19-33 and *Daniels* stand for the proposition that when the statutory penalty for a particular crime is legislatively reduced after the date of the commission of the crime but before the date of sentencing, the trial court must sentence the defendant under the amended statute." *Wilson*, 967 So. 2d at 42 (¶22). While acknowledging the supreme court's pronouncement in *Wilson*,

the majority focuses on the fact that our supreme court refused to reverse the defendant's sentence. It then extrapolates from the court's rationale for not reversing the sentence and, in my opinion, erroneously utilizes that extrapolation as a rationale in today's case to reach the conclusion that Wilson should not be sentenced pursuant to the amended punishment statute. I am at a loss to understand the majority's refusal to follow our supreme court precedent as laid down in *Wilson* and *Daniels*, because the punishment statute, as amended, provides a punishment of the same character, but of milder type, for the crime of receiving stolen property. As stated, *Wilson* makes it crystal clear that if a statute changes the punishment for a crime after a defendant has been indicted or convicted, the defendant must be sentenced to the lesser penalty if one has been provided by the amended statute.

¶54. I now turn to a more detailed discussion of the supreme court's analysis in *Wilson*. In *Wilson*, at the time the defendant committed the crime of felony shoplifting, the statute provided that shoplifting merchandise with a merchant's stated price in excess of $250 was a felony. *Id*. at 42 (¶21). Prior to the defendant being sentenced, the statute was amended to make the crime of shoplifting a felony when the merchant's stated price exceeded $500. *Id*. However, the penalty for felony shoplifting remained the same after the amendment. The defendant argued that she should have been sentenced as a misdemeanant because under the amended statute, shoplifting was a felony only when the merchant's stated value exceeded $500. *Id*. In rejecting the defendant's argument, the supreme court said, "[S]ection 99-19-33 and *Daniels* [were] totally irrelevant to the resolution of the issue presented . . . [because] only the elements of the crime of felony shoplifting changed and not the penalty, which has

remained the same during this amendment process." *Wilson*, 967 So. 2d at 42 (¶42).

¶55.    The majority acknowledges that neither *Wilson* nor *Daniels* is exactly on point because, in the view of the majority, the amendment affects not only the elements of the offense, as is the case in *Wilson*, but also the punishment, as is the case in *Daniels*. But in the very next breath, the majority says, "we are persuaded that *Wilson* and section 99-19-1 . . . are controlling" because "it is impossible to retroactively apply the amendments to the punishments for receiving stolen property without also retroactively applying the amendments to the elements to the offense." Maj. Op. at (¶29). Notably, the majority cites no authority for this assertion, and nothing in *Wilson* justifies the majority's extrapolation from what the supreme court said. Since the interplay between elements and punishment, if any, is not addressed in either *Wilson* or section 99-19-33, there is no reason to venture there. Section 99-19-33 speaks to the punishment that a person should receive for an offense when the statute providing the punishment for that offense has been amended, after the person committed the offense, to provide a lesser penalty. Section 99-19-33 does not require that the elements of the offense, which was a crime under pre-existing law, must correspond to the new sentencing factors, or elements, that serve only to demarcate the offense between a misdemeanor and a felony and provide graduated penalties. But even if it does, the elements of the crime of receiving stolen property have not changed. What has changed is the factors, or elements, that determine the appropriate sentence. *Wilson* simply holds that since the penalty for felony shoplifting was not changed by the amendment of the shoplifting statute, section 99-19-33, which deals only with punishment, and *Daniels*, which teaches that the

32

word "may" in section 99-19-33 means "shall," are inapplicable. Therefore, the *Wilson* court concluded that there was no reason to disturb Wilson's sentence for felony shoplifting.

¶56.    As stated, the real inquiry here is whether receiving stolen property was a crime prior to the amendment of section 97-17-70 and whether section 97-17-70 now provides a punishment of the same character, but of a milder type, for the crime of receiving stolen property—not whether the factors, or elements, that determine the penalty have changed. It is not debatable, and the majority does not deny, that receiving stolen property was a crime prior to the amendment of section 97-17-70. Therefore, we need only look at the second prong of section 99-19-33—whether section 97-17-70 now provides a punishment of the same character, but of a milder type, for the felony crime of receiving stolen property. As stated, it cannot be legitimately argued that it does not.

¶57.    Section 99-19-33 is straightforward and does not require the retroactive application of any new elements that may have been included in the amendment of the statute establishing the new punishments. So the majority's finding that the amended punishment statute cannot be applied because both the elements of, and the punishment for, the crime of receiving stolen property were changed is untenable and is not supported by either *Wilson* or section 99-19-33. In the interest of judicial economy, rather than remanding the case for resentencing, I would modify the judgment of the Circuit Court of Warren County to reflect that Wilson is sentenced, as a habitual offender, to five years in the custody of the MDOC and to pay a $10,000 fine.

**LEE, C.J., BARNES, ISHEE AND JAMES, JJ., JOIN THIS OPINION.**

33