# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-00515-SCT

*TALIB AMMER HANNAH a/k/a TALIB HANNAH*
*a/k/a TALIB A. HANNAH a/k/a KANE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/17/2011 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRANDON ISAAC DORSEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/07/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Following a jury trial in the Circuit Court of Washington County, Mississippi, Talib Hannah was convicted of possession of cocaine with intent. On appeal, Hannah challenges his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. Based upon information from a confidential informant, the "drug unit" of the Washington County Sheriff's Department procured a search warrant for a Greenville,

Mississippi, residence. Upon arrival, Deputy Kevin Seaton positioned himself at a "back window[,]" in the event of an "escape or flee from the scene." When the officers entered the residence, Billy Dean Williams was apprehended while seated in the living room. Hannah fled down the hallway and "went off into a bedroom on the far left . . . ." According to Deputy Seaton, Hannah "hurled himself through the window where I was positioned . . . ." Only Hannah's "upper torso" extended through the window, and he was commanded to "freeze." Hannah opened his hands "as if he was releasing something[,]" then "kind of used his elbows to give himself some leverage to go back in." Seconds later, Hannah was apprehended in the hallway by Sergeant Williams. Sergeant Jimmy Branning went outside "to where Deputy Seaton was standing[,]" and "located . . . a bag of suspected crack cocaine" on the ground beneath the window. Additionally, marijuana and a digital scale were found in the living room, along with cash in the amount of $4,670 on Hannah and $225 on Williams.

¶3.    On June 14, 2010, Hannah and Williams were coindicted for "each acting one with the other, . . . unlawfully, willfully, knowingly and feloniously hav[ing] and possess[ing] 2.6 grams [c]ocaine, a Schedule II controlled substance, with the intent to sell, barter, transfer or . . . ." On August 11, 2010, Williams filed a motion for severance and a separate trial. On August 18, 2010, the trial court granted Williams's motion for severance and a separate trial. On August 13, 2010, Hannah filed a motion for continuance. Hannah's motion for continuance averred his newly appointed counsel needed additional time. The trial court granted the continuance on August 16, 2010. On September 29, 2010, Hannah filed another

2

motion for continuance due to the fact that his attorney had a scheduling conflict. The State did not object and the motion was granted. Trial was set for December 8, 2010. Hannah filed two motions in limine. One of the motions is the subject of the matter on appeal today, a motion for the State to disclose the identity of a confidential informant. Hannah's attorney filed these motions on November 30, 2010, and hand-delivered them on the same date. The court heard them on Monday, December 6, 2010.

¶4.     Following the hearing on December 6, the circuit court denied Hannah's motion.  The circuit court found, "the confidential informant was not present at the time of the alleged crime and will not be called as witness at trial, but merely provided information for the search warrant that was issued in this case.  Accordingly, his identity is protected under the laws of this State."

¶5.     On Wednesday, December 8, 2010, the jury trial commenced.  Following Hannah's introduction to the jury during voir dire, Hannah stated "[c]an I address the [c]ourt, sir?  I just wanted to ask, it was another guy that was – . . . ."  At that point, a brief bench conference was conducted outside the jury's hearing, in which Hannah asked, "[c]an I call . . . [Williams] as a witness?"  Hannah's counsel replied, "we have talked about all this."  In subsequent in-chambers proceedings, Hannah's counsel stated:

> I have explained to [Hannah] . . . .  He still . . . is disgruntled because [Williams] is not here.  He's asked that I issue a subpoena for [Williams].  I have absolutely no idea where [Williams] is.[1]  I have also explained that even

_____

[1]Williams was represented by the local public defender's office and was bonded by a local bail bondsman agency.

3

if [Williams] is subpoenaed to the court today, he has a pending case, and his lawyer . . . may very well invoke the Fifth and not let him testify anyway. . . . [H]aving said all that, I guess to protect [Hannah's] rights, . . . I'll ask for a continuance to find [Williams] for whatever reason that would accomplish.

Despite questioning the futility of calling Williams, Hannah's counsel contended that "[the defense's] position [is] that . . . Williams [is] the one that was selling the drugs, not . . . Hannah," and, as such, "[Williams is] an indispensable witness." The State objected to Hannah's motion for continuance, and maintained that Hannah had been granted two prior continuances and this was a pretextual "delay tactic" with "no real chance that [Williams] would in fact testify." The circuit judge denied Hannah's motion for continuance, and stated:

I'm going to deny the continuance, because I don't think you could get this guy to testify anyway. He – certainly his lawyer would not allow him to testify, because he is under indictment himself. He would have a Fifth Amendment right not to testify like you have a right not to testify. And I'm just not going to grant the continuance for that purpose . . . .

See, if they – and their lawyer would tell them not to testify. Whether they wanted to testify or not, their lawyer would tell them not to. Because I wouldn't let my guy testify, if I were a lawyer.

¶6. Later in voir dire, during further in-chambers proceedings, Hannah stated that he "would like to have a paid lawyer" because he "didn't feel like [his present counsel] was properly ready . . . to go to trial . . . ." The circuit judge stated that Hannah's counsel "has done what the defense lawyers do[,]" and that Hannah had not "articulated a single thing that [counsel] has done or failed to do that would not be done by any other competent lawyer in a case of this nature." Based thereon, the circuit judge concluded that "I'm not going to

continue the trial. Now you can tell [counsel] to leave and you can try the case yourself. I don't think you want to do that." Hannah replied, "[n]o, I wouldn't try to do that."

¶7. During direct examination of the State's first witness, further in-chambers proceedings were conducted, and Hannah stated, "I would like to get another lawyer, but if I have to do it on my own, then that's the procedure." The circuit judge first noted that counsel for Hannah had "34 years of experience in being in here[,]" then stated that "you can go hire another lawyer, but he would have to come in right now, and I'm not going to let you leave the courtroom to go find one." Hannah responded, "I think he's a good lawyer. . . . I feel like if I can just let [the jury] know what's common sense, what took place on the incident . . . without leaving out little key pointers that weigh in my favor, . . . those little key pointers that's not being said could really hurt me . . . ." The circuit judge reiterated that "[y]ou can't get [Williams] because he's indicted in this case[,]" and that Williams's lawyer "would never allow him to testify in this case, because he would be potentially destroying his own case . . . ." The circuit judge then questioned Hannah about his decision to proceed *pro se* and informed him of the risks of self-representation. Ultimately, the circuit judge found that Hannah had made a "knowing, intelligent, and voluntary waiver of [his] right to counsel pursuant to Rule 8.05 of the . . . Uniform Circuit and County Court Rules."

¶8. During trial, Hannah cross-examined several of the State's witnesses, but voluntarily absented himself from the courtroom following a noon recess. The State moved for the trial to continue "forward in absentia." The circuit judge informed the jury that "under the law

5

of this state as long as you are present when the trial begins, the trial proceeds.[2] . . . So we're going to go forward and maybe [Hannah] will show up and maybe he won't . . . ." The jury found Hannah guilty of possession of cocaine with intent. Two months later, a sentencing hearing was conducted with Hannah and new counsel present. Following that hearing, the Court sentenced Hannah to sixty years.[3]

## ISSUES

¶9.     On appeal, this Court will consider:

(1) Whether the circuit court abused its discretion in denying Hannah's "Motion for the State to Disclose the Identity of Its Confidential Informant."

(2) Whether the circuit court abused its discretion in denying Hannah's motion for continuance.

## ANALYSIS

I.     **Whether the circuit court abused its discretion in denying Hannah's "Motion for the State to Disclose the Identity of Its Confidential Informant."**

---

[2]*See* **Blanchard v. State**, 55 So. 3d 1074, 1077-78 (Miss. 2011) (quoting **Jay v. State**, 25 So. 3d 257, 264 (Miss. 2010)) (a defendant's constitutional right "to be present at every stage of his trial . . . may be waived based on a defendant's 'willful, voluntary, and deliberate absence from trial.'"); Miss. Code Ann. § 99-17-9(b) (Rev. 2007).

[3]The circuit court stated: "[Hannah is adjudicated] a subsequent offender pursuant to [Section] 41-29-147, as [Hannah] has been previously convicted of a prior felony relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drug. . . . [F]urther. . . . [Hannah] [i]s a habitual criminal pursuant to [Section] 99-19-81, as [Hannah] has been previously convicted of two prior felonies separately brought and arising out of separate incidents at different times and was sentenced to a year or more in a state or federal penal institution."

¶10. The circuit court's ruling regarding the disclosure, *vel non*, of a confidential informant is reviewed for abuse of discretion. *See **Young v. State***, 245 So. 2d 26, 27 (Miss. 1971).

¶11. The privilege extended to confidential informants operates to protect "the public interest in effective law enforcement[,]" insofar as it "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." ***Roviaro v. United States***, 353 U.S. 53, 59, 77 S. Ct. 623, 627, 1 L. Ed. 2d 639 (1957). Uniform Circuit and County Court Rule 9.04(B)(2) provides that:

> [d]isclosure of an informant's identity shall *not* be required *unless* the confidential informant is to be produced at a hearing or trial or a failure to disclose his/her identity will infringe the constitutional rights of the accused or unless the informant was or depicts himself/herself as an eyewitness to the event or events constituting the charge against the defendant.

URCCC 9.04(B)(2) (emphasis added). According to this Court:

> [i]n ***Pace v. State***, 407 So. 2d 530, 533 (Miss. 1981), the Court said:
>
>> There is no absolute rule requiring disclosure of an informer's identity. Recognition of the public interest and effective law enforcement has led to a privilege, although not absolute, of the prosecution to refuse disclosure of the identity of a confidential informer. [***Roviaro***, 353 U.S. at 53]. In ***Roviaro***, the United States Supreme Court stated:
>>
>>> Where the disclosure of the informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. ([***Roviario***, 353 U.S. at 60-61]).

7

The proper rule regarding the circumstances under which the identity of the informer should be disclosed was stated in [*Young*]:

> Ordinarily, disclosure of the identity of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. *Strode v. State*, 231 So. 2d 779 (Miss. 1970). On the other hand, where the informer is an actual participant in the alleged crime, the accused is entitled to know who he is. . . . (*Young*, 245 So. 2d at 27).

*Read v. State*, 430 So. 2d 832, 835-36 (Miss. 1983).

¶12. In *Read*, this Court concluded that the confidential informant's identity was not required to be disclosed, as:

> it is clear from the record that the informant was *not a participant in the crime*, but that he personally saw drugs at the residence and related such information to the police. There is no indication or suggestion that he bought or used the drugs, and he was *not present when the officers searched the house*.

*Id*. at 836 (emphasis added). *See also* ***Corry v. State***, 710 So. 2d 853, 858-59 (Miss. 1998) ("there is no evidence in the record that the informant participated in the crime or was an eyewitness to the crime. . . . Therefore, the trial judge's decision to deny the defendant's motion to require disclosure of the confidential informant's identity was not manifestly wrong."); ***Esparaza v. State***, 595 So. 2d 418, 424 (Miss. 1992) ("the confidential informant did not witness the offense charged and did not serve as a witness in the proceeding. *The informant merely provided data that established probable cause to support a search warrant. Under Mississippi law, that degree of connection with the crime charged constitutes too tenuous a link to justify disclosing the informant*.") (emphasis added); ***Arnett v. State***, 532 So. 2d 1003, 1008 (Miss. 1988) ("There is no evidence in the record that the informant was

8

a participant or an eyewitness to the crime, and consequently disclosure of the witness was within the sound discretion of the trial judge. . . . No error was committed in withholding the informant's identity.").

¶13. The circuit court's order denying Hannah's "Motion for the State to Disclose the Identity of Its Confidential Informant" provided that "the confidential informant was *not present at the time of the alleged crime and will not be called as witness at trial, but merely provided information for the search warrant* . . . . Accordingly, his identity is protected under the laws of this State." (Emphasis added.) We cannot conclude that the circuit court abused its discretion in denying Hannah's "Motion for the State to Disclose the Identity of Its Confidential Informant," as these circumstances provided "too tenuous a link to justify disclosing the informant." *Esparaza*, 595 So. 2d at 424. Accordingly, this issue is without merit.

## II. Whether the circuit court abused its discretion in denying Hannah's motion for continuance.

¶14. This Court has stated that:

[t]he decision to grant or deny a motion for continuance is within the trial court's sound discretion. *Payton v. State*, 897 So. 2d 921, 931 (Miss. 2003). It "will not be grounds for reversal unless shown to have resulted in manifest injustice." *Id*.

*Harden v. State*, 59 So. 3d 594, 601 (Miss. 2011).

¶15. The circuit court's denial of Hannah's motion for a continuance was for a practical reason, albeit without legal basis. The circuit court recognized the likely (almost certain) futile outcome of the defendant exercising his constitutional right "to have compulsory

process for obtaining witnesses in his favor."[4] However, the circuit court's conclusory reasoning lacks a proper legal basis to deny the defendant his right to call a witness.[5] *See supra,* ¶¶ 5, 7.

¶16. It is well-settled in Mississippi that a "criminal defendant must be allowed to call witnesses to the stand even though the defendant is aware that the witness, if called, will invoke the Fifth Amendment to every question." ***Balfour v. State***, 598 So. 2d 731, 751 (Miss. 1992). "It is not enough to presume or suspicion [sic] that someone will assert his Fifth Amendment privilege against self-incrimination and refuse to testify. [He] must be called to the stand and there refuse to testify before [he] becomes unavailable due to invoking the Fifth Amendment." ***Slater v. State***, 731 So. 2d 1115, 1117 (Miss. 1999).

¶17. Consistent with ***Balfour*** and ***Slater***, this Court also has stated:

---

[4]Miss. Const. art. 3, § 26.

[5]The record reveals multiple legal grounds upon which the circuit court properly might have denied Hannah's motion for continuance. Hannah's *ore tenis* motion on the day of trial which raised the issue of an indispensable witness (for the first time) could have been held to be untimely. Furthermore, Hannah provided no indication to the circuit court that it had been impossible or impracticable to obtain Williams to testify, and he provided no affidavit or proffer as to what Williams's testimony might reveal or how his testimony might aid Hannah's defense. *See* ***Muise v. State***, 997 So. 2d 248, 255 (Miss. Ct. App. 2008) (quoting ***Cleveland v. State***, 820 So. 2d 37, 39 (Miss. Ct. App. 2002)) ("The refusal of a motion for continuance on the ground of the absence of a witness will not be overturned on a motion for new trial unless the witness, or his affidavit showing what his testimony would be, is offered on the hearing of the motion, or it is shown that it was impossible or impracticable to secure the attendance of the witness or to secure his affidavit."). Lastly, Hannah made no request for a subpoena instanter for Williams. Had the circuit court based its denial of continuance on any of, but not limited to, these grounds, we very well may have found that the circuit court was within its discretion to deny Hannah's continuance.

10

[T]his Court ha[s] previously considered the right of a defendant to call a witness when it was known that the witness would claim the Fifth Amendment right to refuse to answer questions. *Stewart v. State*, 355 So. 2d 94 (Miss. 1978). In *Stewart*, we held it was reversible error to refuse to permit the defendant to call as a witness another person involved in the altercation which was the subject of the criminal prosecution. The fact that the witness would refuse to answer most of the questions asked on the grounds that they might incriminate him was held not to bar a defendant's right to call and question witnesses in his behalf.

*Coleman v. State*, 388 So. 2d 157, 158-59 (Miss. 1980). Like the defendants in *Stewart* and *Coleman*, Hannah desired to call a witness, his coindictee, who was "involved in the [event] which was the subject of the criminal prosecution." *Id*. at 159. The circuit court's ruling mirrored the errors found in *Stewart* and *Coleman*, *i.e.*, that it would be futile to put the witness on the stand because he inevitably would invoke his Fifth Amendment privilege against self-incrimination, despite Hannah's constitutional right "to have a the jury hear the [witness] either answer questions or else claim h[is] Fifth Amendment rights." *Id*.

## CONCLUSION

¶18.     As Hannah's Sixth Amendment right to compulsory process to call a witness was not recognized, we are constrained to reverse his conviction and sentence and remand for a new trial.

¶19.     **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**